794 A.2d 723

**Richard WATTS, et al.**

v.

**Michael KING.**

**No. 2236, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 28, 2002.

Amy Leete Leone (D. Elizabeth Walker and McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellants.

Nigel L. Scott (Scott & Yallery–Arthur, on the brief), Washington, D.C., for appellee.

JAMES R. EYLER, KENNEY, and BLOOM, THEODORE G. (Retired, specially assigned), JJ.

KENNEY, J.

This case involves a dental malpractice action filed against appellants, Dr. Richard Watts and Watts Dental Associates, P.C., by appellee, Michael King. Appellants challenge the Circuit Court for Prince George's County's denial of their motion to dismiss. Appellants present the following questions for our review:[1]

1. If a dental malpractice claim is dismissed by the HCAO [Maryland Health Claims Arbitration Office] for failure to file a satisfactory certificate of qualified expert, has that claim been "arbitrated" as required by the Health Care Malpractice Claims Act?

2. Did the circuit court err in refusing to dismiss plaintiff's dental malpractice and "emotional distress" claims when those claims were never arbitrated in the HCAO?

We conclude that we have jurisdiction to address the fundamental issues in this case and shall reverse.

---

**1.** King reworded appellants' questions as follows:

1. Does the Court of Special Appeals have jurisdiction to hear this matter when there has not been a final judgment issued by the Circuit Court?

2. Was the denial of the motion to dismiss by the circuit court arbitrary and capricious, and therefore an abuse of discretion, when as required by statute, the Appellee made a good faith effort to arbitrate the matter by filing an expert certification?

3. Whether the court committed reversible error in denying appellant's motion to dismiss appellee's "emotional distress claim, when that claim was presented to the arbitration panel and when the claim for intentional infliction of emotional distress was included in the original claim filed before the HCAO?

### Factual and Procedural Background

Richard Watts, a dentist licensed to practice in Maryland, operates Watts Dental Associates, P.C., a professional corporation doing business in Maryland. On June 23, 1994, Michael King visited appellants for dental care. Appellants performed dental services on King, including the injection of local anesthesia in the four quadrants of King's mouth.

After the procedure, King experienced prolonged numbness and tingling in his face and was told by appellants to use a gentler toothpaste or to gargle with hot salt water. These remedies were unsuccessful. King suffered severe and permanent injuries, including paresthesia [2] and paralysis [3] of his mouth, lips, and tongue. King alleges that at no point prior to the administration of the local anesthesia did appellants provide any information as to the potential risks associated with the procedure. He claims that appellants only informed him of the possibility of temporary numbness lasting one to three hours.

On June 23, 1997, King filed a two-count malpractice claim with the Maryland Health Claims Arbitration Office ("HCAO") [4] against appellants, alleging appellants' failure to properly administer the anesthesia and their failure to obtain King's informed consent regarding the dental procedure and the associated risks. On January 26, 1999, HCAO entered an order granting King until February 26, 1999, to secure new

---

**2.** Paresthesia is defined as "a sensation of pricking, tingling, or creeping on the skin that has no objective cause." Merriam Webster's Collegiate Dictionary 842 (10th ed. 2000) ("Merriam Webster").

**3.** Paralysis is defined as the "complete or partial loss of function [especially] when involving the motion or sensation in a part of the body" or "loss of the ability to move." Merriam Webster 840.

**4.** The Health Claims Arbitration Act (the "Act"), which created the HCAO, was enacted by the General Assembly to reduce the number of medical malpractice court claims, the cost of malpractice insurance, and ultimately, medical expenses. *Attorney General v. Johnson,* 282 Md. 274, 308, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). *See Also Adler v. Hyman,* 334 Md. 568, 575, 640 A.2d 1100 (1994).

counsel and file a new certificate attesting to appellants' deviation from the standards of care.[5] The order stated that, if King did not obtain new counsel and file a new certificate by that date, it would dismiss his claim.[6] King failed to file the certificate, and, on April 1, 1999, appellants filed a motion to dismiss and a motion for summary judgment. On or about April 20, 1999, King designated Dr. Walter R. Talbott as his expert and submitted the new certificate.[7]

Dr. Talbott's certificate reads:

I, WALTER R. TALBOTT, D.D.S., do hereby state and certify that I am a licensed dentist and I am competent to testify concerning accepted and recognized standards of dental care.

I have reviewed the dental records and other materials and available films concerning the care and treatment of Michael King by Dr. Richard Watts, D.D.S. and Watts Dental Associates and do hereby state and attest that in my professional opinion that Michael King suffered an injury to his upper right dental nerve during the course of treatment

---

**5.** It is unclear from the record why Mr. King needed to secure new counsel.

**6.** King originally designated a Dr. Engle as his expert, who apparently provided a certificate reflecting deviation from the standards of care for administering local anesthesia, but who withdrew from the case. We note that Dr. Engle's name is spelled E–N–G–L–E and E–N–G–E–L throughout the pleadings and briefs. For uniformity, we shall use Engle. We have not been provided with a copy of that certificate, nor has it been argued that that certificate satisfied any obligation to file the required certificate.

**7.** According to Md.Code (1973, 1995 Repl. Vol, 1997 Supp.), § 3–2A–04(b)(1)(i) of the Cts. & Judicial Proc. Article ("CJ"):

(b) Unless the sole issue in the claim is lack of informed consent:

(1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from the standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint. The claimant shall serve a copy of the certificate on all other parties to the claim or to their attorneys of record in accordance with the Maryland Rules.

by Dr. Richard Watts, D.D.S. and Watts Dental Associates. Examination reveals that Mr. King continues to suffer from after effects, including pain and numbness on the right of side [sic] of his face and upper jaw, as a result of his treatment by Dr. Richard Watts and Watts Dental Service. According to Mr. King this pain and numbness did not exist prior to treatment by Dr. Richard Watts, D.D.S. and Watts Dental Associates. Mr. King's injuries resulted solely from and as a result of the services performed by Dr. Richard Watts, D.D.S. and Watts Dental Associates.

I further state that I do not annually devote more than 20% of my professional activities to activities that directly involve testimony in personal injury claims.

I have prepared a report which is attached hereto and incorporated by reference. (See Exhibit A).

The certificate makes no reference to a deviation from the standards of care that is the proximate cause of King's injuries. At Dr. Talbott's deposition, he asserted that Dr. Watts did not deviate from the standards of care.[8] The following exchange took place between Dr. Talbott and appellants' counsel:

[APPELLANTS' COUNSEL]: [D]o you have an opinion ... within a reasonable medical probability that Dr. Watt's [sic] care of Mr. King deviated from the standard of care? [DR. TALBOTT]: **I don't think it did,** . . . .

. . .

[APPELLANTS' COUNSEL]: So as you sit here today, you cannot say that Dr. Watts' care of Mr. King in any way deviated from the standard of care; is that right? [DR. TALBOTT]: Just based on what Mr. King told me, **I didn't find anything that was a deviation,** I just found the injury that was the result of being numb by probably competent well prepared dentists.

---

8. The record does not include a complete copy of Dr. Talbott's deposition. The above exchange was supplied in the joint record extract.

. . .

[APPELLANTS' COUNSEL]: And you cannot say that a deviation from the standard of care caused the injury to the nerve?

[DR. TALBOTT]: That's correct.

On or about January 31, 2000, King received a final memorandum and order from the HCAO Panel Chairperson, granting summary judgment in favor of appellants on both counts of his complaint, granting appellants' motion to dismiss the malpractice claim, and entering judgment in favor of appellants.[9] The HCAO Panel Chairperson found that the expert's certificate failed to attest to the deviation from the standards of care, pursuant to the Health Care Malpractice Claims Act ("the Act:"). In addition, the Panel Chairperson found that King failed to offer evidence to prove that he would have withheld his consent upon full disclosure of the possible consequences based on the objective "reasonable person" standard.

On February 25, 2000, King filed two pleadings in the circuit court: (1) a Complaint to Nullify Panel's Award; and (2) a Notice of Rejection of Arbitration Award.[10] The complaint alleged medical malpractice, lack of informed consent, and emotional distress causes of action. Appellants responded by filing a motion to dismiss King's claims for malpractice and

---

9. COMAR 01.03.01.08, the regulation that is applicable to this hearing, reads, in pertinent part:

A. Issues
(1) The chairman shall decide all issues of law.
(2) The panel, in its entirety, shall decide all issues of fact.
B. Duties of the Chairman. The Chairman shall:
(1) Decide all prehearing procedures including issues relating to discovery;
. . .
(4) Invoke, when necessary, the authority, powers, and directions as would be exercised normally by a circuit court judge in order to preserve the orderly progress of the case, except for contempt citations.

*See* CJ § 3–2A–05.

10. The joint record extract contains a copy of the notice of rejection of the arbitration award, although the court's docket information makes no reference to this pleading.

emotional distress.[11] They argued that King's claims had never been arbitrated by the HCAO, as required by the Act. CJ § 3–2A–02. The court, without a hearing, denied the motion to dismiss on October 4, 2000.

On November 13, 2000, appellants filed this appeal, which on April 10, 2001, we dismissed as premature, without prejudice to their right to timely note an appeal from an adverse final judgment or from an otherwise appealable judgment. Appellants then filed a motion to reconsider. On August 3, 2001, we reinstated this appeal.

## Discussion

### I. Interlocutory Appeal

King contends that there has been no final and appealable judgment issued by the court, and thus, this appeal is not ripe for adjudication. Appellants argue that the circuit court's denial of their motion to dismiss, although an interlocutory decision, is immediately appealable because, in denying it, the court exceeded its jurisdiction. They state that initial jurisdiction over medical malpractice claims lies with HCAO pursuant to CJ § 3–2A–02 and that this case was not arbitrated by the HCAO. Therefore, the circuit court's denial of appellants' motion to dismiss King's dental malpractice and emotional distress claims was in error. King argues that the claim was arbitrated before the HCAO and that his filing of a petition for judicial review in the circuit court was proper.

Maryland Rule 2–602(a) provides:

(a) *Generally.* Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire

11. Appellants did not include the lack of informed consent claim in the motion to dismiss because that claim was arbitrated before the HCAO and therefore was properly before the circuit court. That claim has been stayed by the Circuit Court for Prince George's County pending this appeal.

claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) *When allowed.* If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

The general rule is that an interlocutory order or decision is not immediately appealable, but may be reviewed on appeal from a final judgment. Rule 8–202(a); *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989). The reason for the rule is sound; it prevents repeated and piecemeal appeals and the protraction of litigation for indefinite periods. *Tharp v. Disabled Am. Veterans Dep't,* 121 Md.App. 548, 564, 710 A.2d 378 (1998).

In discussing final judgments, the Court of Appeals has noted:

If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Rohrbeck,* 318 Md. at 41, 566 A.2d 767. An order of a trial court denying a motion to dismiss is considered an interlocu-

tory order from which no appeal rights ordinarily lie until after entry of a final judgment. *Montgomery County v. Ian Corp.*, 282 Md. 459, 467–68, 385 A.2d 80 (1978).

The General Assembly has deemed certain interlocutory orders immediately appealable pursuant to CJ § 12–303.[12]

---

**12.** CJ § 12–303 provides:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order.

(2) An order granting or denying a motion to quash a writ of attachment.

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause.

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause.

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction.

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause.

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court.

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination.

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules.

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article.

(ix) Granting a petition to stay arbitration pursuant to § 3–208 of this article.

(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order.

(xi) Denying immunity asserted under § 5–525 or § 5–526 of this article.

Other interlocutory orders have been judicially recognized as being immediately appealable: (1) a denial of a motion to dismiss on the basis of double jeopardy, *Neal v. State,* 272 Md. 323, 325–28, 322 A.2d 887 (1974); (2) where, in a criminal case, the trial court refuses to enforce an agreement between the defendant and the State, *see Jackson v. State,* 358 Md. 259, 267–71, 747 A.2d 1199 (2000); and most pertinent to this case, (3) an order that exceeds the jurisdiction of the trial court, *see Waters v. Smith,* 277 Md. 189, 196, 352 A.2d 793 (1976); *Schwartz v. Lilly,* 53 Md.App. 318, 325, 452 A.2d 1302 (1982).

In *Waters,* 277 Md. 189, 352 A.2d 793, the parents of a minor child filed a medical malpractice action in the child's name against several named medical providers. The plaintiffs sought to introduce the testimony of a medical expert by serving the defendants with supplemental answers to interrogatories announcing their intention to call the previously unidentified expert. The trial court agreed to prevent the testimony of the medical expert if the plaintiffs agreed to a mistrial and the case continued for further assignment. After the mistrial in the Circuit Court for Baltimore County, the defendants moved to dismiss the case, to enter a default judgment, and to compel plaintiffs to pay costs. The trial court signed an order referring the matter to a master for assessment of costs and expenses and stayed all further proceedings "until further order of the Court."

From that order, the plaintiffs appealed to this Court. We dismissed the appeal in *Waters v. Smith,* 27 Md.App. 642, 342 A.2d 8 (1975). The Court of Appeals granted certiorari. The Waters alleged that the order, even if interlocutory, was immediately appealable for three reasons: 1) that appellants were denied an absolute constitutional right; 2) that the order exceeded the jurisdiction of the trial court; and 3) that the trial court abused its discretion by impairing established rights. *Waters,* 277 Md. at 195, 352 A.2d 793. In its decision, the Court acknowledged that an appeal would immediately lie from an order that exceeded the trial court's jurisdiction but, citing *Cohen v. Willett,* 269 Md. 194, 195, 304 A.2d 824, 825 (1973), said that the rule "applies only '[w]here the issue on

appeal is not the wisdom or correctness of an order, but rather whether the lower court had power to pass an order....'" *Waters*, 277 Md. at 196, 352 A.2d 793. The court affirmed our decision dismissing the appeal, concluding that the circuit court's order was not a final order and that the appeal was not permitted by CJ § 12–303. *Waters*, 277 Md. at 197–98, 352 A.2d 793.

In *Schwartz*, 53 Md.App. 318, 452 A.2d 1302, Erol and Nancy Lilly filed a malpractice action against Dr. Schwartz. Dr. Schwartz filed a motion raising a preliminary objection based on plaintiffs' failure to file their claim with the HCAO. The trial court denied the motion and ordered that the proceedings be transferred to HCAO. This Court vacated the circuit court's order and remanded the case with instructions to grant the motion. In doing so, however, we said that "an appeal from an interlocutory order that exceeds the jurisdiction of the trial court may be maintained." *Id.*, at 325, 452 A.2d 1302.

■ We are persuaded that the denial of appellants' motion to dismiss constituted an interlocutory order that is immediately appealable even though other claims, the court's jurisdiction over which are not challenged, are still pending in the trial court. We reach this conclusion because King failed to invoke the jurisdiction of the trial court by not arbitrating his claim as required by the Act. We explain.

In *Schwartz, supra,* we said "initial jurisdiction" in a medical malpractice suit subject to the Act "exclusively belongs to the HCAO." *Schwartz*, 53 Md.App. at 322, 452 A.2d 1302. This concept of "initial jurisdiction" was explained in *Oxtoby v. McGowan*, 294 Md. 83, 87, 447 A.2d 860 (1982), and *Bishop v. Holy Cross Hosp.*, 44 Md.App. 688, 692, 410 A.2d 630 (1980), in terms of a condition precedent to the institution of a court action and as being analogous to the doctrine of exhaustion of administrative remedies. According to Judge Rodowsky, writing for the Court in *Oxtoby,* and referring to the doctrine of exhaustion of administrative remedies: "**So strong is this public policy that this Court will,** *sua sponte,* **vacate judg-**

ment and order an action dismissed where the litigants have not followed the special statutory procedure." *Oxtoby*, 294 Md. at 91, 447 A.2d 860 (emphasis added). He went on to say that "[t]he public policy embodied in the Act is **equally as strong.**" *Id.* at 91, 447 A.2d 860 (emphasis added).

■ Appellants' argument is that King did not follow the required statutory procedures prior to filing his action in the circuit court, and therefore, the claim was not arbitrated. If the claim was not arbitrated, the subject matter jurisdiction of the trial court could not be invoked. Thus, jurisdiction was not available for the adjudication of King's claim and dismissal was the appropriate response. Although subject matter jurisdiction over a medical malpractice claim may reside in the circuit court, the legislative prohibition against the exercise of that jurisdiction in medical malpractice claims subject to the Act is the functional equivalent of a lack of jurisdiction. An interlocutory appeal is appropriate because entertaining King's unarbitrated claims would, in effect, exceed the circuit court's jurisdiction, in that the condition precedent to the exercise of its jurisdiction has not been satisfied.

## II. Arbitration
### The Medical Malpractice Claim

Appellants contend that King's claims were not arbitrated before the HCAO pursuant to the Act because the certificate of King's qualified expert was "unsatisfactory" in that it did not establish within the appropriate degree of medical certainty that there had been a violation of the appropriate standard of care. King argues that the claim was arbitrated before the HCAO, in good faith, because there was no "wilful or deliberate delay, or attempt to avoid arbitration." He contends that he properly participated in the arbitration process, filed a certificate of a qualified expert, and made every attempt to arbitrate this matter.

■ CJ § 3–2A–02(a)(1), requires that

[a]ll claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this

**title,** by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle. [Emphasis added.]

*See also Edward W. McCready Memorial Hosp. v. Hauser,* 330 Md. 497, 500, 624 A.2d 1249 (1993). Therefore, unless waived in accordance with the statute, "[a]ll claims" must be submitted to mandatory arbitration as a pre-condition to any court action.[13] The arbitration process can be waived pursuant to CJ § 3–2A–06A(a), which provides that "[a]t any time before the hearing of a claim with the Health Claims Arbitration Office, the parties mutually may agree to waive arbitration of the claim," or unilaterally pursuant to either CJ § 3–2A–06B (b), which provides that "any claimant may waive arbitration at any time after filing the certificate of qualified expert[,]" or CJ § 3–2A–06B(c), which provides that "any defendant may waive arbitration at any time after the claimant has filed the certificate of qualified expert."

The duty of the claimant is to "file his claim" with the Director of the HCAO. CJ § 3–2A–04(a). CJ § 3–2A–02(c) provides:

In any action for damages filed under this subtitle, the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

A claimant is required to file a certificate of a qualified expert attesting that the licensed professional against whom the claim was filed breached the standard of care. CJ § 3–2A–04(b)(1)(i). As we have observed, absent a mutual agreement,

---

**13.** The arbitration system implemented by the Act has been held constitutionally sound. *Attorney Gen. v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

there can be no unilateral avoidance of mandatory arbitration until such time as the claimant has filed the "certificate of qualified expert." This demonstrates the importance to the arbitration process of an expert's certificate supporting the claimant's position.

The Court of Appeals has held that the filing of the statement of claim, pursuant to CJ § 3–2A–04(a), without presentation of any evidence before a medical malpractice arbitration panel, does not satisfy the condition precedent of arbitration. In *Bailey v. Woel*, 302 Md. 38, 40, 485 A.2d 265 (1984), claimant's counsel declined to put on any testimony before the arbitration panel and refused to provide a reason for that decision. Dismissal by the circuit court of such a claim was determined to be the proper action. *Bailey*, 302 Md. at 45, 485 A.2d 265.

In *McCready Memorial Hosp., supra*, the Court of Appeals affirmed the decision of the circuit court, dismissing the plaintiff's claim for failure to arbitrate, based on a failure to file a certificate of qualified expert. The Court explained that

the Maryland Health Care Malpractice Claims Statute mandates that claimants arbitrate their claims before the HCAO as a condition precedent to maintaining a suit in a circuit court. The Statute defines the procedure under which such claims must be arbitrated. A claimant's filing an expert's certification is an indispensable step in the HCAO arbitration process.

*McCready Memorial Hosp.*, 330 Md. at 512, 624 A.2d 1249. The Court held that a party who fails to file an expert's certification has "failed to arbitrate their claim as required by the Statute." *McCready Memorial Hosp.*, 330 Md. at 513, 624 A.2d 1249. *See also Robinson v. Pleet*, 76 Md.App. 173, 177, 544 A.2d 1, *cert. denied*, 313 Md. 689, 548 A.2d 128 (1988) ("A dismissal, whether it occurs because the claimant refused to present any evidence or because she failed to comply with the statutory procedure necessary to maintain her claim, prevented the arbitration panel from hearing the merits of the claim."). *But see Wyndham v. Haines*, 305 Md. 269, 275–77,

503 A.2d 719 (1986) (A claim was presented to an arbitration panel where it was dismissed, in favor of the health care provider, because the claimants had failed to establish a *prima facie* case of liability at the arbitration hearing.).

Section 3–2A–04(b)(1)(i) indicates that a claim "shall be dismissed" if the claimant fails to file a certificate of a qualified expert "attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." If the filing of an expert's certificate as required by § 3–2A–04(b)(1)(i) is an indispensable step in the arbitration process, as the Court of Appeals said it was in *McCready, supra,* the question is whether Dr. Talbott's certificate constituted compliance with the statutory guidelines mandated by the Maryland General Assembly. In other words, does filing a certificate that does not demonstrate a deviation from the standard of care and the related proximate cause of the alleged injury satisfy the statutory requirement? If it does not, dismissal is required and the arbitration panel does not hear the merits of the claim. § 3–2A–04(b)(1)(i); *Robinson, supra;* and *see Karl v. Davis,* 100 Md.App. 42, 56, 639 A.2d 214, *cert. denied,* 336 Md. 224, 647 A.2d 444 (1994).

In *Karl,* 100 Md.App. at 56, 639 A.2d 214, we stated:

In *Wyndham,* [supra], the claimant's failure at arbitration was clearly not due to any deliberate refusal to present sufficient evidence. Indeed, the Panel Chairman stated in an affidavit that the claimant had made a good faith effort to establish his case. This is fundamentally different from the case at bar. *Wyndham* does not stand for the proposition that a failure to present a *prima facie* case for any reason is sufficient to allow a subsequent trial in circuit court to proceed. Nor does *Wyndham* require us to hold that presentation of some form of expert testimony is sufficient to satisfy the condition precedent to arbitrate. Such an interpretation would require us to hold that any evidence presented, regardless of adequacy, substance, surrounding circumstances, or the motivations of counsel,

would be sufficient to comply with the mandate to arbitrate the issue.

The claimant in *Karl* relied upon deposition testimony that was read into the record at the arbitration hearing, which failed to indicate to a reasonable degree of medical probability that appellants violated the standards of care in treating Karl. This Court concluded that

> it is clear that we will not allow dismissal of a case from the circuit court if the claimant has made a good faith effort, but, nevertheless, has failed to establish a *prima facie* case of medical negligence. It must therefore follow that if a claimant fails to establish a *prima facie* case because of a deliberate or knowing refusal to proffer adequate testimony, the claim must be dismissed. This requires some evidence of deliberate or knowing conduct on the part of the claimant or his or her counsel.

*Karl*, 100 Md.App. at 58, 639 A.2d 214. We held that the claimant's failure to present expert testimony regarding the medical provider's deviation from the standard of care "within a reasonable degree of medical certainty" did not demonstrate a lack of good faith warranting dismissal by the trial court for a failure to arbitrate. We limited our holding in *Karl* to its "unique facts" and said that, in the future,

> if the plaintiff's entire evidence before the [Health Claims Arbitration Panel], regarding standard of care, consists of a transcript of opinions not expressed to a reasonable degree of medical probability by the plaintiff's expert during his or her discovery deposition, the plaintiff will not have made a good faith effort to arbitrate.

*Karl*, 100 Md.App. at 59, 639 A.2d 214.

Dr. Talbott's certificate does not attest to a deviation from the standard of care and that any deviation was the proximate cause of the alleged injury. As Dr. Talbott explained in his deposition, he found no deviation from the standard of care. We equate King's failure to file a certificate that meets the statutory requirements to the cases in which no certificate was filed. Therefore, although King's attempts might be consid-

ered a good faith effort to arbitrate, in the sense that he tried to comply and filed the best certificate available to him, he failed to satisfy CJ § 3–2A–04(b)(1)(i), which we deem to be an indispensable step in the arbitration process. Therefore, King's dental malpractice claim was not arbitrated before the HCAO and could not be considered by the circuit court.

### Emotional Distress

We turn next to whether King's emotional distress claim should have been dismissed by the circuit court. Appellants point out in their brief that King was attempting to state a claim for intentional infliction of emotional distress in Count III of his complaint. King's complaint filed with the HCAO listed two counts: (1) medical malpractice; and (2) lack of informed consent. King argues that his HCAO complaint "included the claim for emotional distress as a part of the overall claim for damages." We find nothing in the complaint that could be interpreted as an independent claim for intentional infliction of emotional distress. In fact, the complaint states that the claims are based on appellants' failure "to conform to the standard of care," appellants' "negligence," and appellants' "failure" to "inform" and "advise" King of the risks, implications, and consequences involved with the medical services rendered. Thus, we conclude that King failed to present his intentional infliction of emotional distress claim to the HCAO. To the extent that it was part of King's "overall claim for damages" in the malpractice claim, it fails for the same reason as his medical malpractice claim failed.

It is true that, although CJ § 3–2A–02(a) requires that "[a]ll claims" shall be submitted to the HCAO for arbitration, intentional torts may be excluded from the Act's jurisdiction. *See Goicochea v. Langworthy,* 345 Md. 719, 725–29, 694 A.2d 474, *cert. denied,* 522 U.S. 924, 118 S.Ct. 321, 139 L.Ed.2d 249 (1997) (complaint alleging assault and battery regarding the actions of the medical provider during a routine medical examination fell within the jurisdiction of the Act); *Jewell v. Malamet,* 322 Md. 262, 271–72, 587 A.2d 474 (1991) (action for assault and battery, based on the physician's alleged sexual

misconduct during the course of a medical examination, was insufficient to bypass the arbitration process); *Nichols v. Wilson*, 296 Md. 154, 161, 460 A.2d 57 (1983) (the Act did not include a physician's unprovoked and intentional slap of the plaintiff's cheek, which constituted an assault and battery); *Long v. Rothbaum*, 68 Md.App. 569, 573–75, 514 A.2d 1223 (1986) (an action is subject to arbitration under the Act where it is based on actions that are said to be in violation of mandated health care standards).

The Act provides the arbitration procedure for a person who suffered a "medical injury" at the hand of a "health care provider." CJ § 3–2A–02(a). In *Cannon v. McKen*, 296 Md. 27, 34, 459 A.2d 196 (1983), the Court of Appeals explained that

the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act.

The Court went on to state that, in order to bypass the Act's arbitration requirement, a claimant "must allege sufficient facts to make clear the theory upon which the alleged liability is based. It is a basic rule of law that where a cause of action is dependent upon a condition precedent, plaintiff must allege performance of such condition or show legal justification for nonperformance." *Cannon*, 296 Md. at 38, 459 A.2d 196. The question then becomes whether the tort alleged is "among those intentional torts that are covered by the Act." *Long*, 68 Md.App. at 575, 514 A.2d 1223.

In *Goicochea*, 345 Md. 719, 694 A.2d 474, the medical provider, with Langworthy's consent, performed a hernia examination to determine the source and cause of pain in Langworthy's groin area. Claiming that he suffered "a permanently painful injury in [his] left groin," Langworthy, in addition to filing a medical malpractice claim with the HCAO,

filed in the circuit court an assault and battery action against the health care provider. In response to the circuit court filing, the medical provider filed a motion to dismiss, arguing that the court did not have jurisdiction over the action. The circuit court dismissed the action. This Court reversed the circuit court, concluding

> that a wilful and deliberate act other than one usually involved in medical treatment or examination on the part of the physician, such as an assault and battery, does not qualify as a "medical injury" as defined by the Act. A wilful and deliberate act to assault and batter is not a breach of a professional duty because a professional duty is one *required* in the proper exercise of the profession.

*Langworthy v. Goicochea,* 106 Md.App. 265, 274, 664 A.2d 422 (1995) (emphasis in original). The Court of Appeals reversed, concluding that Langworthy failed to establish the factual basis on which the circuit court could conclude that the medical provider's "actions had no conceivable medical validity or were totally unrelated to the performance of a routine hernia examination." *Goicochea,* 345 Md. at 729, 694 A.2d 474. In addition, the Court's conclusion was partially based on the fact that Langworthy did not file with the HCAO the certificate of a qualified medical expert.

On the other hand, in *Nichols,* 296 Md. 154, 460 A.2d 57, the plaintiff filed a three-count action based on assault and battery, negligence, and intentional infliction of emotional distress. The action alleged that the defendant, without provocation, intentionally slapped the plaintiff. The Court concluded that the assault and battery claim did not fall within the Act's scope because the medical provider's actions fell outside his professional duty to exercise care. The Court further held that the intentional infliction of emotional distress claim also fell outside the Act's scope due to its dependancy on the assault and battery claim. *Id.* at 161, 460 A.2d 57.

■ We believe that this case is analogous to *Goicochea, supra,* and that King's intentional infliction of emotional distress claim was required to be submitted to HCAO for arbitra-

tion. King failed to establish the factual basis to conclude that appellants' actions were unrelated to the performance of their medical services. Unlike *Nichols, supra*, we observe no allegations in the record that indicate that appellants' actions constituted an intentional act that was not related to the medical services provided. In the absence of some intentional act outside the scope of medical treatment, we hold that King's intentional infliction of emotional distress claim could not bypass the Act.

Because King's medical malpractice and intentional infliction of emotional distress causes of action were not arbitrated before the HCAO, he failed to satisfy the condition precedent to maintaining a suit in the circuit court. Therefore, both claims should have been dismissed by the court.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**