**Thelma NELSON, et al.**

v.

**Elie G. DEBBAS, et al.**

**No. 1881, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 8, 2004.

Ron Simon (Kenneth M. Trombley, on the brief), Washington, D.C. for appellant.

Thomas L. Doran, Lanham, (Robert W. Goodson, Byron J. Mitchell, on the brief), Washington, D.C., for appellee.

Panel: HOLLANDER, SHARER, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned) JJ.

SHARER, J.

Appellants, Thelma Nelson, Individually, and as Personal Representative of the Estate of Madeline V. Lyons, and others, filed a medical negligence action against appellees, Elie G. Debbas, M.D., and Fort Washington Hospital, pursuant to the Maryland Health Care Malpractice Claims Act.[1] On motions of appellees, the Circuit Court for Prince George's

---

1. In their First Amended Complaint, appellants additionally named as defendants Michael G. Sidarous, M.D., Hengameh N. Mesbahi, M.D., and Patrick W. Daly, M.D. The circuit court granted Daly's and Mesbahi's motion to dismiss on August 29, 2003. The claim against Dr. Sidarous was resolved prior to this appeal.

County dismissed the action against Elie G. Debbas, M.D., and granted summary judgment in favor of Fort Washington Hospital.

Appellants have raised for our review two questions, which we have recast as follows: [2]

1. Did the trial court err in dismissing appellants' medical negligence suit on the ground that appellants failed to file a Certificate of Qualified Expert, as required by the Maryland Health Care Malpractice Claims Act?

2. Was the evidence sufficient to create a dispute of material fact on the question of whether there was an agency relationship between the attending physicians, who administered care to the Decedent, and the Hospital?

For the reasons that follow, we shall reverse the orders of the circuit court.

## FACTUAL BACKGROUND[3]

On May 10, 2000, Madeline V. Lyons ("Decedent") visited the emergency room at Fort Washington Hospital ("the Hospital"), complaining of weakness and fatigue. At the Hospital, she was examined and treated by Dr. Hengameh N. Mesbahi,

---

**2.** As set out in appellants' brief, their questions are:

I. Did the trial Court err in dismissing appellant's medical malpractice action against Appellees Debbas and Hospital based upon an erroneous conclusion that the expert who signed the certificate of qualified expert, Ann M. Gordon, M.D., retroactively retracted the Certificate in her deposition testimony even though the record contains a subsequent affidavit by the certifying expert reiterating the opinions that she supposedly rerepudiated [sic]?

II. Did the trial Court err in dismissing the claims against Appellee Hospital on the grounds that there was no actual or apparent agency of Appellee Hospital even though the Decedent regularly used Appellee Hospital, relied on its services, signed into Appellee Hospital, signed all appropriate medical release forms, and spent an entire day in Appellee Hospital's emergency room being cared for by Appellee Hospital's staff?

(subparts omitted).

**3.** We rely on the well-pleaded facts as set out in appellants' first amended complaint.

who advised Decedent to follow up with her primary care physician, Dr. Michael G. Sidarous.

On May 12, 2000, Decedent presented to Dr. Sidarous with symptoms similar to those she complained of at the Hospital on May 10. Dr. Sidarous diagnosed Decedent with mild congestive heart failure, and prescribed medication. He further advised her to return to the Hospital should her symptoms worsen. On May 16, 2000, Decedent returned to the Hospital, complaining of excruciating abdominal pain.

On both May 10 and May 16, the Hospital required that Decedent complete a consent form, entitled "Conditions of Admission to Emergency Department of Hospital." The form contained the following language:

**MEDICAL CONSENT:** I hereby voluntarily consent to such diagnostic procedures and hospital care and to such therapeutic treatment by doctors of the medical staff of Fort Washington Hospital, which, in their judgment becomes necessary while I am an Emergency Department patient or an inpatient in said hospital.

Upon her completion of the medical consent on May 16, Decedent was admitted to the Hospital's emergency room.

Decedent was first seen by Patrick W. Daly, M.D., an emergency room physician and Director of the Hospital's Emergency Medical Department, in the emergency room shortly after 9:00 a.m. Dr. Daly examined Decedent and ordered certain diagnostic tests, including x-rays. At about 10:45 a.m., Decedent was diagnosed as having free air under the left diaphragm.

About one hour later, Dr. Daly requested a surgical consult with Dr. Debbas, Chief of Surgery at the Hospital (who was also then President of the Medical Staff). Dr. Debbas and Dr. Sidarous, Decedent's personal physician, suggested that she undergo a CT scan. The scan, performed promptly, revealed a condition requiring early surgical intervention.

At 1:00 p.m., on the order of Dr. Debbas and Dr. Sidarous, Decedent began what would become three hours of blood

transfusion. Between the hours of approximately 12:45 p.m. and 6:00 p.m., no constant and ongoing physical monitoring of Decedent occurred. At about 6:30 p.m. Decedent was admitted to surgery and the administration of anesthesia was begun. At 8:05 p.m., while in surgery, Decedent went into cardiac arrest. Attempts to resuscitate her were unsuccessful, and she died at 9:01 p.m.[4]

Appellants assert that the delay from the time of discovery of Decedent's condition until the surgery constituted medical negligence, which was the proximate cause of Decedent's death.

## PROCEDURAL HISTORY

On April 8, 2002, appellants filed a Statement of Claim against Dr. Debbas and the Hospital with the Health Claims Arbitration Office (HCAO), pursuant to the Maryland Health Care Malpractice Claims Act ("the Act"), Md.Code. Ann., Cts. and Jud. Proc. §§ 3–2A–01 to 3–2A–09 (2002 Repl. Vol & 2004 Supp.). Accompanying the Statement of Claim was a Certificate of Qualified Expert, executed by Ann M. Gordon, M.D., attesting to the appellees' deviations from the appropriate standard of medical care. Appellants filed an Election to Waive Arbitration pursuant to § 3–2A–06B of the Act, and, on April 30, 2002, filed the instant action in the Circuit Court for Prince George's County. The litigation proceeded on appellants' subsequently-filed first amended complaint.

Dr. Debbas filed a motion to dismiss, predicated on the single assertion that appellants had failed to file an appropriate Certificate of Qualified Expert. The motion to dismiss was granted by the court on August 29, 2003.[5]

The Hospital filed a motion for summary judgment, initially on the basis of the allegedly defective certificate, but later

---

**4.** We shall address additional facts where appropriate.

**5.** Dr. Daly and Dr. Mesbahi likewise filed motions to dismiss. Those motions were granted by the circuit court on August 29, 2003. No appeal has been taken from those dismissals.

supplemented by the argument that the record did not support a finding of negligence by the Hospital. That later argument raises the issue of apparent authority of the treating physicians and potential vicarious liability. The circuit granted the motion for summary judgment on August 29, 2003.

Appellants filed appropriate motions to reconsider, all of which were denied by the circuit court on October 2, 2003. Appellants filed their timely notice of appeal on October 27, 2003.

## DISCUSSION

### I. Did the trial court err in dismissing appellants' medical negligence suit on the ground that appellants failed to file a Certificate of Qualified Expert, as required by the Maryland Health Care Malpractice Claims Act?

▇▇▇ We hold that appellants' Certificate of Qualified Expert satisfies the Act's requirements and shall reverse the trial court's grant of Dr. Debbas's motion to dismiss.[6] We also

---

6. The circuit court entered an order on August 29, 2003, dismissing the complaint against Dr. Debbas with prejudice. Appellants filed appropriate motions to reconsider or revise. Those motions were denied by order of the circuit court of October 2, 2003. In the latter order, the court included the following:

That the provision of this Court's August 29, 2003, Order that "the claims set forth in the First Amended Complaint against Dr. Debbas are hereby dismissed with prejudice" be and the same is hereby VACATED in order that the record might correctly reflect the fact that the Defendant's Motion to Dismiss was considered by the Court as a motion for summary judgment.

The rationale for the above-quoted language was that in considering Dr. Debbas's motion to dismiss the court "considered documents outside the motion."

Dr. Debbas's motion to dismiss was just that; it was not a motion to dismiss, or in the alternative a motion for summary judgment. At no time during the circuit court proceedings did the parties seek to convert the motion to dismiss to a motion for summary judgment. The consideration by the court of documents and matters outside the pleadings is the basis for the court's *sua sponte* conversion of the Debbas motion to dismiss to a motion for summary judgment.

hold that the record supports a finding that there exists a dispute of material fact relating to the apparent authority of the physicians *vis-a-vis* the Hospital, and the potential of vicarious liability of the Hospital.

## Standard of Review

In reviewing the circuit court's dismissal of appellants' claim against Dr. Debbas, we shall assume the truth of the well-pleaded facts in the complaint and the inferences which we may reasonably draw from such facts. *Parker v. Kowalsky & Hirschhorn, P.A.,* 124 Md.App. 447, 458, 722 A.2d 441 (1999) (citing *Simms v. Constantine,* 113 Md.App. 291, 296, 688 A.2d 1 (1997)). We "must [also] consider well-pleaded facts and allegations in the light most favorable to the appellant." *Id.* at 458, 722 A.2d 441 (alterations added)(citing *Berman v. Karvounis,* 308 Md. 259, 264, 518 A.2d 726 (1987)). As a result, "[d]ismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Simms, supra,* 113 Md.App. at 296, 688 A.2d 1 (alterations added) (quoting *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993)).

## *Certificate of Qualified Expert*

Appellees, in their motions to dismiss, do not challenge the adequacy of the averments in appellants' first amended complaint relating to allegations of medical negligence. Rather, they attack the procedural underpinnings of the complaint— that the Certificate of Qualified Expert was defective. Therefore, we shall first address the validity of appellants' Certificate of Qualified Expert which, based upon its order of dismissal, the circuit court found to be inadequate.

---

In this appeal, all parties have briefed, and argued, the disposition of the complaint against Dr. Debbas as a motion to dismiss. Because the trial court's disposition was based on a matter of law—the legal sufficiency of the Certificate of Qualified Expert—and not a matter of fact, we shall review this aspect of the appeal under the dismissal standard.

The Act requires arbitration as a condition precedent to the initiation of a medical negligence suit in the circuit court. §§ 3–2A–02(a), 3–2A–04(a)(1) to 3–2A–09; *see also Manzano v. S. Md. Hosp. Inc.,* 347 Md. 17, 22–23, 698 A.2d 531 (1997). As part of the arbitration process, the claimant must file a Certificate of Qualified Expert within 90 days of the filing of the statement of claim. (The time for filing may be extended upon a showing of good cause). § 3–2A–04(b)(5); *McCready Mem'l Hosp. v. Hauser,* 330 Md. 497, 501, 624 A.2d 1249 (1993). As to the Certificate, § 3–2A–04(b) specifies:

*Filing and Service of Certificate of Qualified Expert*— Unless the sole issue in the claim is lack of informed consent:

(1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director *attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint*[.]

(Emphasis added.) The Act additionally provides that "discovery is available as to the basis of the certificate." § 3–2A–04(b)(3).

We have recently said, in *D'Angelo v. St. Agnes Healthcare, Inc.,* 157 Md.App. 631, 645, 853 A.2d 813 (2004):

[T]he obvious purpose of the certificate requirement reflects the General Assembly's desire to weed out, shortly after suit is filed, nonmeritorious medical malpractice claims. The certificate of a qualified expert is an "indispensable step" in the arbitration process. *McCready Mem'l Hosp. [v. Hauser]*, 330 Md. [497] (1993). It is so important that, if the certificate requirement is not followed, a circuit court action will be dismissed *sua sponte. Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982). And, failure to file a proper certificate is tantamount to not having filed a certificate at all. *See Watts v. King,* 143 Md.App. 293, 307–310, 794 A.2d 723 (2002).

Appellants filed their Statement of Claim and Certificate of Qualified Expert simultaneously on April 8, 2002. Ann M. Gordon, M.D., appellants' certifying expert, states

I, Ann M. Gordon, M.D., hereby certify ... it is my opinion that Michael G. Sidarous, M.D., *Elie G. Debbas, M.D., and the staff at Fort Washington Hospital deviated from applicable standards of medical care* in connection with their care and treatment of Madeline V. Lyons. It is my further opinion that *the deviations from the standard of care were the proximate cause of the death of Madeline V. Lyons.*

(Emphasis added.)

Dr. Gordon's certificate was timely filed, attested specifically to appellees' (and others') deviations from the standard of medical care, and opined that such deviations were the proximate cause of Decedent's death.[7] Section 3–2A–04(b) mandates nothing more for full compliance. In the form submitted, appellant's Certificate of Qualified Expert satisfies the requirements of the Act.

Subsequent to the filing of the certificate, Dr. Gordon was deposed.[8] Based on answers given by her in discovery, appellees assert that Dr. Gordon subsequently contradicted the Certificate in deposition testimony and, as a result, rendered it invalid. Appellees rely on the following dialogue during examination by Dr. Sidarous's counsel:

Q. Based on your review of the materials, have you formed opinions that you hold with[in] reasonable medical probabili-

---

7. This case is distinct from *Watts v. King,* 143 Md.App. 293, 794 A.2d 723 (2002.) In that case, the doctor rendering the Certificate of Qualified Expert failed to specifically attest to any deviation of care *in* the certificate itself. Thus, Dr. Debbas's reliance on that case is misplaced.

8. We cannot discern from the record whether Dr. Gordon was deposed merely as the certifying physician, or because she had been designated as a trial witness.

At this point, we note that the parties, in their respective briefs, debate the effect of certain limiting agreements regarding the extent and import of Dr. Gordon's deposition testimony. None of those issues were before the trial court, hence they have no appellate significance.

ty as to whether any health care provider defendant deviated from [the] standard of care in their care and treatment of Madeline Lyons?

A. Yes, I do.

Q. Tell me first which health care provider you intend to render opinions about.

A. Dr. Sidarous.

Q. Have you formed any opinions with regard to any other health care providers beyond him?

A. No.

Later in the deposition, counsel for Dr. Debbas asked Dr. Gordon

Q. Dr. Gordon, I'll be very short. I represent Dr. Debbas, the surgeon in this case, and your counsel was kind enough to say at the outset of your deposition you don't intend to render any opinions regarding my client, Dr. Debbas, is that correct?

A. That's correct. *I believe that there will be other medical experts who will be addressing those opinions and issues.*

(Emphasis added.)

Appellees, based on those answers by Dr. Gordon, posit that appellants' compliance with the certificate requirement "was illusory because Dr. Gordon testified that she had not formed any opinions against Dr. Debbas or any other health care providers beyond Dr. Sidarous. This fundamental inconsistency renders the Appellants' Certificate substantively deficient."

After Dr. Gordon's deposition, appellants, in an effort to recenter her opinions, filed an affidavit in which Dr. Gordon averred, under oath:

I, Ann M. Gordon, M.D., hereby swear and affirm under the penalties of perjury and upon personal knowledge that:

1. I am over 18 years of age and competent to testify to the contents contained herein.

2. I have reviewed the entire medical record of Madeline V. Lyons relating to her death on May 16, 2000, including, but not limited to, the records from Ft. Washington Hospital for May 10, 2002, office notes of Dr. Michael G. Sidarous, M.D., records from Ft. Washington Hospital for May 16, 2000, and the Death Certificate and the Autopsy Report of Madeline V. Lyons.

3. Based upon my review of the entire medical record of Madeline V. Lyons from May 10, 2000 until her death, I executed a Certificate of Qualified Expert on behalf of the Plaintiffs with regard to the breaches in the standard of care by the medical staff, including physicians, at Fort Washington Hospital, Dr. Michael G. Sidarous, and Dr. Elias G. Debbas.

4. At the time I executed the Certificate of Qualified Expert, it was my understanding that the medical "staff" at Fort Washington Hospital included Dr. Daly.

5. While I have opinions with regard to the breaches in the standard of care by each of the physicians and medical staff referenced above, counsel for Plaintiff has not asked me to testify at trial with regard to all of those opinions. Counsel for Plaintiff has requested that I testify only as to the breaches in the standard of care by Dr. Michael G. Sidarous.

6. At the time of my deposition, it was my understanding that I was only to testify with regard to the opinions that I will be offering at trial, not the opinions that I have with regard to the breaches in the standard of care by other named Defendants, including, Dr. Elias G. Debbas, Dr. Patrick W. Daly and the rest of the medical staff at Fort Washington Hospital.

7. It is still my opinion today that each of the named Defendants, including Dr. Michael G. Sidarous, Dr. Elias G. Debbas, and Dr. Patrick W. Daly, breached the applicable standard of care and that those breaches in the standard of care were the proximate cause of the death of Madeline V. Lyons.

Appellees counter that the latent deficiency of the certificate cannot be cured by the affidavit. (We shall discuss the sham affidavit aspect, *infra* ).

Certificates of Qualified Expert have been rejected as being non-compliant with the Act on several grounds. *See Witte v. Azarian,* 369 Md. 518, 801 A.2d 160 (2002)(the "expert" is not qualified to render an opinion); *McCready Memorial Hosp., supra* (certificate not timely filed); *D'Angelo v. St. Agnes Healthcare, Inc.,* supra; *Watts v. King,* 143 Md.App. 293, 794 A.2d 723 (2002) (certificate defective on its face). The question before us is, therefore, whether Dr. Gordon's deposition testimony undermined her certificate, rendering it defective.

Dr. Gordon's certificate was all-inclusive. It asserted deviation from the standard of care by Dr. Debbas, Dr. Sidarous and "the staff" of the Hospital. Only later, at her deposition, did she appear to narrow her focus. Taken in a vacuum, that conclusion might appear to be reasonable. However, a fair reading of her deposition leads to a conclusion that she did not disavow her certificate opinion. Rather she emphasized that she had been retained to testify as an expert *at trial* only with respect to the deviation by Dr. Sidarous, and that other experts would offer opinions relating to Dr. Daly, Dr. Ebbas, and the Hospital staff.

The fact that appellants had retained the services of other experts (Drs. Gouge and Longmore) to give opinions as to the breaches of the standard of care by other defendants is significant. Appellees were not in the dark as to those experts—their names were disclosed in discovery and they were, in fact, deposed by appellees. The record does not support a conclusion that appellants' case would rise or fall on the trial testimony of Dr. Gordon.

We find nothing in the Act, or in the case law, that compels us to hold that the certifying physician must also be prepared to testify at trial as to the breach of the standard of every named defendant. It is not uncommon, in fact, for the certifying physician not to be a trial witness at all.

We are satisfied that a fair reading of the record supports our conclusion that Dr. Gordon's deposition testimony did not amount to a disavowal of her certificate attestation. Even had our minds been in a state of equipoise as to that proposition, the scale would assuredly be tipped in favor of viability of the certificate by her subsequent affidavit.

### The Affidavit

The opinion of the Court of Appeals in *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 754 A.2d 1030 (2000), controls our consideration of the Gordon affidavit.[9] In *Pittman*, a child plaintiff sued a property owner and manager alleging lead paint exposure. After the defendants moved for summary judgment, plaintiff's mother, and others, attested in an affidavit contrary to earlier deposition testimony. Defendants' motions to strike the affidavits as "sham" were granted by the circuit court. This Court's affirmance, on the basis that the later-filed affidavit could not be used to contradict the earlier deposition testimony, resulted in a grant of *certiorari* by the Court of Appeals.[10] The Court rejected adoption of the sham affidavit rule—that is, the rejection of clarifying affidavits.

Speaking for the Court, Judge Rodowsky noted the distinction between a sham affidavit that may be disregarded, and a correcting or clarifying affidavit that should be considered. The Court adopted factors, earlier enumerated in *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703 (3d Cir.1988), to be considered in making the distinction, including

> whether an explanation is offered for the statements in the affidavit that contradict prior sworn statements; the importance to the litigation of the fact about which there is a contradiction; the frequency and carefulness of questions posed at deposition concerning this fact; whether the nonmovant had access to this fact at or prior to the deposition;

9. We find no distinction, as appellee Hospital suggests, in the fact that *Pittman* involved lead paint exposure.

10. *Pittman v. Atlantic Realty Co.*, 356 Md. 495, 740 A.2d 613 (1999).

the frequency and degree of variation between statements on deposition and statements made in the affidavit concerning this fact; whether the deposition testimony indicates that the witness was confused at the time; when, in relation to summary judgment, the affidavit is submitted.

*Pittman,* 359 Md. at 536, 754 A.2d 1030.

As we view Dr. Gordon's certificate assertions, her deposition testimony, and her clarifying affidavit, we are satisfied that the affidavit does, in fact, offer an adequate explanation for her seeming contradiction.  Of course, the sufficiency of the certificate is central to appellants' ability to maintain their action.  As we view the deposition testimony, we do not find Dr. Gordon to have been confused—she was asked specific, albeit limited, questions about her intended trial testimony, all of which she answered succinctly.  Finally, we note that appellants' counsel acted in a timely fashion in filing the affidavit to clarify Dr. Gordon's deposition testimony.

We are aware that *Pittman* might be distinguishable because the trial court was considering motions for summary judgment, not, as here, motions for dismissal.[11]  However, we believe that the principle is applicable.  Counsel's limited, and carefully crafted, questions to Dr. Gordon led her into what could be considered to be a contradictory position, *vis-a-vis* her certificate attestation.  We see the subsequent affidavit as being correcting or clarifying, rather than a sham that ought to be disregarded.

We hold that the Certificate of Qualified Expert, on the opinion of Dr. Gordon, is not substantially defective and complies with the certificate requirement of the Act.  We shall reverse the circuit court's dismissal, on that basis, of appellants' complaint against appellee, Dr. Debbas.

---

11.  As we have noted in note 6, *supra,* the court, *sua sponte,* converted the motion to dismiss to a motion for summary judgment, albeit after the fact.

*II. Was the evidence sufficient to create a dispute of material fact on the question of whether there was an agency relationship between the attending physicians, who administered care to the Decedent, and the Hospital?*

██  Upon her admission to Fort Washington Hospital on May 16, 2000, Decedent was attended by the staff of the hospital and by several physicians, including Dr. Debbas, Dr. Hengameh N. Mesbahi, and Dr. Patrick W. Daly. Each was named as a defendant by appellants in their first amended complaint. The hospital moved for summary judgment, citing two grounds: the insufficiency of the Certificate of Qualified Expert, and, essentially, a lack of agency relationship between the physician defendants and the Hospital. Having resolved the certificate issue, we turn to the agency question.

## Standard of Review

Maryland Rule 2–501(e) mandates that "the court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We review the trial court's decision to grant summary judgment using a *de novo* standard. *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707 (2002) (citing *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715 (2002)). As part of our *de novo* review, we must determine whether there exists a dispute as to a genuine issue of material fact. *Id.* at 359–60, 800 A.2d 707 (citing *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206 (2001)). If there exist no genuine disputes as to any material facts, we must ascertain whether the trial court was "legally correct" in granting summary judgment. *Id.* at 360, 800 A.2d 707. In doing so, we shall construe the facts properly before the court and any reasonable inferences that we may draw from them in the light most favorable to the non-moving party. *See Todd v. MTA,* 373 Md. 149, 155, 816 A.2d 930 (2003).

It is the Hospital's contention that the attending physicians were independent contractors and that no agency relationship exists. Because the circuit court did not elaborate on the record, or by written memorandum, its basis for the grant of summary judgment in favor of appellee hospital, we are unable to determine with precision the basis for its ruling. We shall assume that, in addition to its finding of an insufficient certificate, the court found no agency relationship between the individual physicians and the Hospital.

### Apparent Authority

In the context of medical negligence actions, the Court of Appeals has endorsed the apparent authority theory of the Restatement (Second) of Agency § 267, which provides

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care and skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

See Mehlman v. Powell, 281 Md. 269, 273, 378 A.2d 1121 (1977); B.P. Oil Corp. v. Mabe, 279 Md. 632, 643, 370 A.2d 554 (1977).

The apparent authority theory has been applied in a situation analogous to the facts sub judice. In Mehlman v. Powell, supra, 281 Md. 269, 378 A.2d 1121, the plaintiff went to a hospital emergency room for treatment. The plaintiff had no knowledge that the emergency department of the defendant hospital was operated, not by the hospital, but by an independent contractor. An emergency room physician, on duty at the time, and attending the plaintiff, misread an electrocardiogram, an error that ultimately contributed to the plaintiff's death. The Court of Appeals rejected the hospital's argument that it could not be vicariously liable for the actions of an independent physician's negligence:

[A] [h]ospital ... is engaged in the business of providing health care services. One enters a hospital for no other reason. When [plaintiff] made the decision to go to [the

hospital], he obviously was relying on [the hospital] to provide them. Furthermore, the [h]ospital and the emergency room are located in the same general structure . . .

\* \* \*

It is not to be expected that, and nothing put [plaintiff] on notice, that the various procedures and departments of a complex modern hospital . . . are in fact franchised out to various independent contractors.

*Mehlman, supra,* 281 Md. at 274, 378 A.2d 1121 (alterations added).

The Court held that the hospital was liable for the physician's negligence because it had represented that the staff in the emergency room were its employees, and that the representation caused the decedent to rely on the staff's skill. *Id.* at 275, 378 A.2d 1121.

More recently, we addressed a similar issue in *Hunt v. Mercy Med. Ctr.,* 121 Md.App. 516, 710 A.2d 362 (1998). In *Hunt,* the plaintiff filed a medical negligence action against a physician and a medical center. The plaintiff alleged that the physician who was responsible for a misdiagnosis was an agent of that medical center. *Id.* at 547, 710 A.2d 362. The medical center claimed the physician was an independent contractor. *Id.* at 545, 710 A.2d 362. Reversing the trial court's grant of summary judgment in favor of the medical center, this Court recognized that "it cannot seriously be contended that [the plaintiff] when he was being carried from room to room . . . should have inquired whether the individual doctors who examined him were employees . . . or were independent contractors." *Id.* at 547, 710 A.2d 362 (citing *Mehlman, supra,* 281 Md. at 273, 378 A.2d 1121 (quoting with approval *Stanhope v. Los Angeles Coll. of Chiropractic,* 54 Cal.App.2d 141, 128 P.2d 705, 708 (1942))).

We conclude that our observation in Hunt is dispositive of the agency question. It would be absurd to expect that an emergency room patient, with no particular sophistication about the operation and management of hospitals or medical

clinics, should inquire into who is, and who is not, an employee of the institution, rather than an independent contractor.

Adding considerable weight to that basic proposition, as we consider the specific facts presented by this record, is the Hospital's medical consent form. As a prerequisite to admission into the Fort Washington emergency room, Decedent signed the following:

**MEDICAL CONSENT:** I hereby voluntarily consent to such diagnostic procedures and hospital care and to such therapeutic treatment *by doctors of the medical staff of Fort Washington Hospital,* which, in their judgment becomes necessary while I am an Emergency Department patient or an inpatient in said hospital.

(Emphasis added.)

This consent form cannot be read to have put Decedent, or any patient for that matter, on notice that she was about to be treated by an independent contractor-physician, rather than by a physician employed by the Hospital. Quite the opposite, its language might well be read to confirm to a patient that the attending physicians were members of the staff of the Hospital.

Significantly, the record demonstrates that Dr. Debbas was the President of the Medical Staff and Chief of Surgery at the Hospital at the time of Decedent's admission. At the same time, Dr. Daly was Director of Emergency Medicine. Those facts, taken with the language of the consent form, clearly create a question of fact as to apparent authority and potential vicarious liability. We are reminded of Judge Thieme's closing words in *Hunt:* "[W]e find the *Mehlman* case sufficiently analogous to the present one that its holding should be followed and the issue of apparent authority should be determined by a jury." [12]

---

12. *Mehlman v. Powell* was appealed after a trial and verdict, thus the Court of Appeals held that the facts created vicarious liability of the defendant hospital. *Hunt v. Mercy Medical Center,* in contrast, came to this Court following the grant of summary judgment, which is the posture of the case *sub judice.*

We hold that the evidence of record is sufficient to create a genuine dispute of material fact on the issue of apparent authority and vicarious liability. Hence, we shall reverse the circuit court's grant of summary judgment in favor of the Hospital and return this case to the circuit court for appropriate further proceedings.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY GRANTING SUMMARY JUDGMENT REVERSED; COSTS ASSESSED TO APPELLEES, EQUALLY.**