624 A.2d 1249

**Edward W. McCREADY MEMORIAL HOSPITAL et al.**

v.

**Maxine HAUSER et vir.**

**No. 73, Sept. Term, 1992.**

Court of Appeals of Maryland.

May 11, 1993.

Reconsideration Denied June 23, 1993.

498

499

S. Allan Adelman (Godard, West & Adelman, P.C., on brief), Rockville, Kurt D. Karsten (David R. Thompson, Cowdrey, Thompson & Karsten, P.A., on brief), Annapolis, for appellant.

Fletcher P. Thompson on brief, Cambridge, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired) Specially Assigned, JJ.

CHASANOW, Judge.

## I.

In 1976, the General Assembly enacted the Health Care Malpractice Claims Statute (the Statute) in response to explosive growth in medical malpractice claims and the resulting effect on health care providers' ability to obtain malpractice insurance. Chapter 235 of the 1976 Acts of Maryland; *see generally* K. Quinn, *The Health Care Malpractice Claims Statute: Maryland's Response to the Medical Malpractice Crisis*, 10 U.Balt.L.Rev. 74 (1980) (describing evolution of Statute and assessing its early effectiveness). "[T]he general thrust of the Act [is] that medical malpractice claims be submitted to arbitration as a precondition to court action" where the potential claim exceeds the district court's concurrent jurisdiction. *Attorney General v. Johnson*, 282 Md. 274, 278–79, 385 A.2d 57, 60 (1978); *see also Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982); Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–2A–02(a).[1] The

---

**1.** Hereinafter all statutory references will be to Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, unless otherwise indicated.

basic procedures for initiating and maintaining a claim under the Statute are clear and simple. The Statute requires that a person with a medical malpractice claim first file that claim with the Director of the Health Claims Arbitration Office (HCAO). § 3–2A–04(a). Thereafter, the plaintiff must file a certificate of qualified expert (expert's certificate) attesting to a defendant's departure from the relevant standards of care which proximately caused the plaintiff's injury. § 3–2A–04(b)(1)(i). In general, the Statute mandates that the HCAO dismiss, without prejudice, any claim where the plaintiff fails to file an expert's certificate within 90 days, § 3–2A–04(b)(1)(i), unless the plaintiff obtains one of three statutory extensions of the time to file an expert's certificate: § 3–2A–04(b)(5),[2] § 3–2A–05(j),[3] and § 3–2A–04(b)(1)(ii). At issue in the instant case is the interpretation and application of the latter provision, § 3–2A–04(b)(1)(ii).

## II.

On March 14, 1990, five days before the statute of limitations on their claim was to run, Maxine Hauser and her husband John filed a claim with the HCAO against Dr. Christjon J. Huddleston, Dr. Gregory N. Thompson, and the Edward W. McCready Memorial Hospital (the Defendants), as required by § 3–2A–04(b)(1) of the Health Care Malpractice Claims Statute. The Hausers alleged that Dr. Huddleston and Dr. Thompson negligently diagnosed her condition, allowing a cancerous tumor to go untreated which ultimate-

---

**2.** Section 3–2A–04(b)(5) provides:
"(5) An extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted *for good cause shown.*" (Emphasis added).

**3.** Section 3–2A–05(j) provides:
"(j) *Authority to lengthen or shorten time limitation.*—Except for time limitations pertaining to the filing of a claim or response, the Director or the panel chairman, *for good cause shown,* may lengthen or shorten the time limitations prescribed in subsections (b) and (g) of this section and § 3–2A–04 of this article." (Emphasis added).

ly resulted in the loss of a portion of her left lung. The claim further alleged that McCready Hospital, as Dr. Huddleston's employer, was liable under the doctrine of *respondeat superior*. Although their claim was timely filed, the Hausers failed to file an expert's certificate with the HCAO within 90 days as required by § 3–2A–04(b)(1)(i), which provides:

"(b) *Filing and service of certificate of qualified expert.*—Unless the sole issue in the claim is lack of informed consent:

(1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint. The claimant shall serve a copy of the certificate on all parties to the claim or their attorneys of record in accordance with the Maryland Rules."

After the 90–day filing period expired on June 13, 1990, all the Defendants filed motions to dismiss. Each Defendant asserted that the Hausers failed to file a timely expert's certificate.

On July 3, 1990, 111 days after filing their claim, the Hausers responded to the motions to dismiss. They did not file an expert's certificate; they did, however, request a 90–day extension under § 3–2A–04(b)(1)(ii), which provides:

"(ii) In lieu of dismissing the claim, the panel chairman shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim has expired; and

2. The failure to file the certificate was neither willful nor the result of gross negligence."

The Hausers alleged that the statute of limitations had run and that their failure to file the expert's certificate was

neither willful nor a result of gross negligence. The Hausers did not seek a "good cause" extension under § 3–2A–04(b)(5) or § 3–2A–05(j) or otherwise allege that "good cause" existed for an extension. The HCAO did not take any immediate action on this request, but scheduled a hearing on October 9, 1990. Following the hearing on October 17, 1990 (217 days after filing the claim), the Panel Chair dismissed the Hausers' claims for failure either to file an expert certification or request an extension within the initial 90–day period following the filing of their claim. At the time the Panel issued its ruling, the Hausers still had not filed the required certificate.

The Hausers filed a notice rejecting the orders and findings of the Panel Chair and instituted an action in the Circuit Court for Wicomico County to nullify those orders and findings, asserting claims identical to those brought before the HCAO. The Defendants filed motions to dismiss, arguing that the Hausers failed to arbitrate their claims before the HCAO by their failure to file an expert's certificate. In response, the Hausers contended that § 3–2A–04(b)(1)(ii) created a mandatory extension for filing an expert's certificate and that the Panel Chair therefore erred in failing to grant their request for such an extension. The circuit court, Judge Richard D. Warren, granted the Defendants' motions to dismiss the Hausers' action. In doing so, Judge Warren essentially interpreted § 3–2A–04(b)(1)(ii) as providing a mandatory and automatic 90–day extension. Based on this interpretation, Judge Warren ruled that the Hausers had already received their required 90–day extension because the Panel did not dismiss their claim until thirty-seven days after the total 180–day period provided for in the Statute. The judge concluded that the Hausers did not comply with the Statute since, even by the time of the HCAO hearing on the motion to dismiss, they had not filed the required expert's certificate. The Hausers appealed.

In an unpublished opinion, the Court of Special Appeals reversed the circuit court. The Court of Special Appeals

agreed that the 90–day extension under § 3–2A–04(b)(1)(ii) was mandatory where the statute of limitations had run and where the claimants' failure to file was not willful or grossly negligent. The intermediate appellate court held, however, that the circuit court erred in ruling that the Hausers had already received their 90–day extension and that the extension period ran during the Panel Chair's inaction on the extension request. Instead, the intermediate court decided that the Hausers had never received a 90–day extension. Although the court held that the extension was mandatory, it reasoned that the second 90–day period could not have commenced until the Hausers received notice of the Panel's decision granting their motion for an extension. The court held that, until that time, the Hausers had no obligation to file an expert's certificate. We granted certiorari to address this matter of statutory construction. 328 Md. 35, 612 A.2d 897 (1992).

### III.

The issue before this Court concerns the interpretation of the 90–day extension provided by § 3–2A–04(b)(1)(ii). In undertaking the task of interpreting, we are guided by the rule that "[i]n construing a legislative enactment the fundamental judicial task is to determine and effectuate the legislature's intent. . . ." *Scheve v. Shudder,* 328 Md. 363, 371, 614 A.2d 582, 586 (1992). To achieve this goal, "the words of the statute are to be given their ordinary and natural import . . . since the language of the statute is the primary source for determining legislative intent." *Revis v. Maryland Auto. Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483, 484 (1991) (citations omitted). In addition, "a provision contained within an integrated statutory scheme must be understood in that context and harmonized to the extent possible with the other provisions of the statutory scheme." *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 157, 501 A.2d 1307, 1313 (1986) (citations omitted).

## A.

■ The Defendants contend that the Court of Special Appeals erred in not following *Robinson v. Pleet,* 76 Md. App. 173, 544 A.2d 1, *cert. denied,* 313 Md. 689, 548 A.2d 128 (1988). At issue in *Robinson* was the timing of a request for a "good cause" extension to file an expert's certificate under § 3–2A–04(b)(5). As in this case, the claimant in *Robinson* filed her claim with the HCAO just before the expiration of the statute of limitations, but failed to file either the required expert's certificate or a request for an extension before the 90–day period expired. As a result, the panel chair granted a defendant's motion to dismiss. On appeal, the Court of Special Appeals held that the then-existing version of § 3–2A–04(b)(1) required dismissal of a claim where claimants did not file an expert's certificate or request an extension of the time to file within 90 days of initiating a claim.[4] In upholding the circuit court, the Court of Special Appeals touched upon the interrelationship of § 3–2A–04(b)(1) and a § 3–2A–04(b)(5) extension. That court expressed its interpretation of that interrelationship as follows:

> "Subsection (b)(1) (which states that the certificate must be filed within 90 days) and subsection (b)(5) (which gives a claimant the right to request an extension) can be construed consistently if (b)(5) simply gives a claimant the right to request an extension *before* the expiration of the 90 day period. If such a request is not made and granted, then dismissal is mandatory under (b)(1) for non-compliance with the statute." (Emphasis in original).

*Id.* at 183, 544 A.2d at 5–6. From this, the Defendants assert that under *Robinson,* the Hausers were required to request an extension under § 3–2A–04(b)(1)(ii) within the

---

**4.** The version of § 3–2A–04(b)(1) that was at issue in *Robinson* provided:

> "(1) A claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of qualified expert with the Director ... within 90 days from the date of the complaint."

initial 90–day filing period. They reason that since the Hausers failed to do so, the Hausers were not entitled to an extension.

We do not now express an opinion as to the viability of *Robinson* and the time frame in which a claimant must request an extension under § 3–2A–04(b)(5). This issue need not be decided in the instant case.[5] Nevertheless, we note that the Defendants' reliance on *Robinson* is misplaced. The issue in *Robinson* was the timing of a request for a "good cause" extension under § 3–2A–04(b)(5), not an extension under § 3–2A–04(b)(1)(ii). In fact, *Robinson* not only predated § 3–2A–04(b)(1)(ii), the provision at issue in the instant case, but the General Assembly enacted the provision at issue here in response to *Robinson*. *Robinson* construed § 3–2A–04(b)(1) as mandating that a panel chair dismiss a claim for failing to file a timely expert's certificate, without first giving the claimant an opportunity to rectify the defect. This result was potentially harsh where the statute of limitations had run because such claimants were time barred from refiling their claims, despite the fact that the claims may have been meritorious and timely when filed.

The legislative response to *Robinson* was swift. In the very next legislative session, H.B. 766 was introduced and directly addressed *Robinson*'s holding. Not only does the Bill File for H.B. 766 contain a copy of *Robinson v. Pleet*, but H.B. 766 initially sought to change paragraph (b)(1)'s mandatory dismissal provision to a discretionary one. *See* Bill Analysis, H.B. 766, 1989 Session (stating that the proposed bill "*authorizes*, rather than *requires*, a claim to be dismissed if the claimant fails to file, within 90 days from the date of the complaint, a certificate of a qualified ex-

---

5. We note, however, that there could conceivably be instances where there might be "good cause" to grant a request for an extension that was made after the initial ninety-day period, in lieu of dismissing the claim.

pert...") (Emphasis added). The bill approved by the House Judiciary Committee provided:

"FOR the purpose of <u>providing that dismissal, without prejudice, of a claim filed in the Health Claims Arbitration Office is discretionary if the claimant fails to file a certificate of a qualified expert under certain circumstances;</u> ...

\* \* \* \* \* \*

3–2A–04.

(b) Unless the sole issue in the claim is lack of informed consent:

(1) A claim filed after July, 1, 1986, <s>shall</s> <u>MAY</u> be dismissed without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director ... within 90 days from the date of the complaint...." [The underlined portions indicate proposed amendments to the bill, and those with strikeouts indicate proposed deletions from the bill.]

This suggested amendment of § 3–2A–04(b)(1) was hotly contested and subsequent versions of the bill vacillated as to whether the dismissal of a claim should be mandatory or discretionary where the claimant failed to file an expert's certificate within the stipulated 90 days. *See* Bill File, H.B. 766 (1989) (containing several drafts whose proposed wording of amended paragraph (b)(1) alternated between "shall" and "may").

The enacted version of the bill was a compromise. It left the mandatory language of paragraph (b)(1) intact as part of new subparagraph (b)(1)(i), while adding a new extension provision, subparagraph (b)(1)(ii), which applied in those limited circumstances where a claimant filed an expert's certificate after both the initial 90–day period and the statute of limitations had run. This result maintained manageable time limits for the resolution of health care malpractice claims when the statute of limitations has already run, while giving claimants a degree of protection from the dismissal of potentially meritorious claims. At a minimum,

this legislative history demonstrates that, even if this Court were inclined to endorse *Robinson,* § 3–2A–04(b)(1)(ii) is a separate extension provision, distinct from § 3–2A–04(b)(5) which was at issue in *Robinson,* and is therefore not controlled by *Robinson.*

Setting *Robinson* aside, we turn to an analysis of § 3–2A–04(b)(1)(ii). The Hausers adopt the position of the Court of Special Appeals, arguing that they were entitled to a § 3–2A–04(b)(1)(ii) extension since the statute of limitations had run and their failure to file an expert's certificate was neither willful nor a result of gross negligence. They assert that they were not obligated to file the expert's certificate until receiving notice that the Panel Chair had granted their request. We disagree and hold that under § 3–2A–04(b)(1)(ii) a bare request for an extension does not entitle à claimant to a 90–day additional filing period commencing whenever the claimant receives notice that an extension has been granted. Rather, this 90–day extension commences, without the necessity of a request, upon the expiration of the initial 90–day period and is only available where the expert's certificate is filed within the 90–day extension period, *i.e.,* within 180 days of filing the initial complaint.

 This is the first opportunity for this Court to interpret § 3–2A–04(b)(1)(ii) and to harmonize the various extension provisions of the Statute. The Statute currently provides three extension provisions. The Statute's "good cause" extension provisions are found in §§ 3–2A–04(b)(5) and 3–2A–05(j). These two provisions permit either the Director or a panel chair to grant an extension to file an expert's certificate upon a showing of "good cause." To qualify for either of the "good cause" extensions, the Statute requires the claimants to first demonstrate that "good cause" exists for granting an extension. These provisions are silent as to the timing of a request, and they do not expressly limit the length of any extension. Presumably, the length of the extension, if granted, would be based on the nature of the "good cause" shown. Absent the

claimant's request and appropriate showing of good cause, the panel chair or Director must dismiss the claim, without prejudice, if the claimant failed to timely file an expert's certificate. § 3–2A–04(b)(1)(i). Assuming the statute of limitations has not run, the claimants may simply refile their claim with the HCAO.

Section 3–2A–04(b)(1)(ii) is a much narrower provision. It applies only in those instances where the initial 90–day period and the statute of limitations have run and where the claimants' failure to file an expert's certificate was neither willful nor a result of gross negligence. Subparagraph (b)(1)(ii) thus provides some relief to certain claimants, such as those in *Robinson,* whose claims would otherwise be dismissed and time barred due to their failure to satisfy the Statute's procedural requirements, without requiring them to prove "good cause" under §§ 3–2A–04(b)(5) or 3–2A–05(j).

Commensurate with subparagraph (b)(1)(ii)'s application in a more limited set of circumstances, its provisions are less flexible than those of the "good cause" provisions. In contrast to the malleable extension available under the "good cause" provisions, § 3–2A–04(b)(1)(ii) provides claimants "an extension of *no more than* 90 days." (Emphasis added). Also, unlike the "good cause" exceptions, claimants do not have to make a request or preliminary showing in order to obtain a § 3–2A–04(b)(1)(ii) extension. Rather, the panel chair grants it "[i]n lieu of dismissing the claim." In effect, the claimants may obtain a § 3–2A–04(b)(1)(ii) extension virtually automatically, without the need to first allege and prove good cause. Section 3–2A–04(b)(1) provides:

"(1)(i) *Except as provided in subparagraph (ii)* of this paragraph, a claim ... shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director ... within 90 days from the date of the complaint...."

"(ii) *In lieu of dismissing the claim,* the panel chairman *shall grant* an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim has expired; and

2. The failure to file the certificate was neither willful nor the result of gross negligence." (Emphasis added).

■ The structure of § 3–2A–04(b)(1) demonstrates that the General Assembly intended subparagraphs (b)(1)(i) and (b)(1)(ii) to operate in tandem. *See Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–67, 620 A.2d 340, 342 (1993) ("In determining the meaning of the statutory provisions, the statute must be examined as a whole and the interrelationship or connection among all its provisions are considered."). Subparagraph (b)(1)(i) establishes the general rule that a panel chair *"shall* dismiss" all claims where the claimant failed to file a timely expert's certificate. Subparagraph (b)(1)(ii) provides an express directive to the panel chair. It directs that *"[i]n lieu of* dismissing the claim, the panel chairman *shall* grant an extension of no more than 90 days,"* under the stated circumstances. (Emphasis added). There is no indication that the claimant need formally or informally request this extension, and we conclude that the claimant need not do so. Instead, we believe the legislature intended that this extension be granted automatically in lieu of dismissal, subject to a defendant's motion to dismiss on the grounds that the claimant's failure to file the expert's certificate within the first 90 days was grossly negligent or willful. The Legislature's use of the clause "an extension of no more than 90 days" in the context of this Statute also indicates a legislative intent that the subparagraph (b)(1)(ii) extension commences at the expiration of the first 90–day period. Webster's defines "extension" as "an increase in length of time: increased or continued duration ... a part that is extended from or attached to a main body or section as an addition, supplement, or enlargement...." *Webster's Third New International Dictionary* 804–05 (1986) (emphasis in original). The term "extension," in the context of

this provision, indicates a tacking of an added period of time to the initial 90–day period. *See Revis*, 322 Md. at 686, 589 A.2d at 484 (when the language of the statute is plain and has a definite and sensible meaning, it shall be presumed to be the meaning the legislature intended). The Legislature specifically provided that this additional time period shall be "no more than 90 days." This language indicates that the General Assembly intended to create a limited 90–day extension that commences immediately and automatically upon the expiration of the initial 90–day period. The reason for the time limit is obvious—for subparagraph (b)(1)(ii) claimants, the statute of limitations has run and the claimants have already had a considerable period of time to prepare their claims. In contrast to the "good cause" extensions under §§ 3–2A–04(b)(5) and 3–2A–05(j), subparagraph (b)(1)(ii) gives claimants in a limited set of circumstances up to 180 days to file an expert's certificate without the need to prove "good cause."

Our interpretation is in keeping with both the literal terms of the Statute and the legislative policy of assuring the prompt and efficient arbitration of health claims. The Court of Special Appeals' interpretation, on the other hand, would allow indefinite extensions under subparagraph (b)(1)(ii), and read the phrase "an extension of no more than 90 days" out of the Statute. Although there would still be two 90–day periods, they could be separated by a indefinite period of time caused by delay in the Panel's consideration of the request for an extension. For instance in this case, if the Panel had granted on October 17, 1990 the Hausers' request for a subparagraph (b)(1)(ii) extension, under the intermediate appellate court's approach the Hausers would then have had 90 additional days to file their expert's certificate from the date they received notice of the Panel's decision. Without ever having to prove good cause, the Hausers would then have had 307 days from the date they filed their claims and an extension of 217 days from the expiration of the initial 90–day period in which to submit

their expert's certificate.[6] We do not believe the General Assembly countenanced such a significant potential delay when it created "an extension of no more than 90 days" for cases where the statute of limitations has already run.

■ In sum, the language and structure of § 3–2A–04(b)(1)(ii) demonstrate that the General Assembly sought to create an extension provision that was independent from the "good cause" extension provisions. To avail themselves of a subparagraph (b)(1)(ii) extension, claimants need only file their expert's certificate within 180 days from the date they filed their claim with the HCAO. Upon filing an expert's certificate within the 180–day period, claimants automatically invoke up to a 90–day extension, subject to the defendants' objection via a motion to dismiss. At the motion to dismiss hearing, the defendants must establish that the claimant was not entitled to a subparagraph (b)(1)(ii) extension because the claimant's initial failure to file an expert's certificate was either willful or a result of gross negligence.

### B.

■ In light of our holding, we must reverse the Court of Special Appeals. The Maryland Health Care Malpractice Claims Statute mandates that claimants arbitrate their claims before the HCAO as a condition precedent to maintaining a suit in a circuit court. The Statute defines the procedure under which such claims must be arbitrated. A claimant's filing of an expert's certificate is an indispensable step in the HCAO arbitration process. In the case *sub judice*, the Hausers failed to comply with the requirements of subparagraph (b)(1)(ii) by failing to file the required certificate of qualified expert during either the initial 90–

---

6. We need not decide whether such a result might be permissible upon a showing of good cause under §§ 3–2A–04(b)(5) or 3–2A–05(j). Although extensions longer than ninety days are permissible under these provisions, the Hausers, as we stated earlier, never pursued one of these other extensions or attempted to show good cause below.

day period or the 90–day extension period. Indeed, the Hausers conceded at oral argument before this Court that they have not yet obtained an expert's certificate. While the Hausers did file a *request* for an extension within the first 90–day period, a bare request for an extension does not toll the second 90–day time period under § 3–2A–04(b)(1)(ii). Where a claimant seeks a § 3–2A–04(b)(1)(ii) extension, it must file the expert's certificate within the second 90–day period, *i.e.,* within 180 days from the initial filing of the claim. We need not decide whether the Hausers would have been entitled to an extension upon a showing of good cause because they neither sought one of the good cause extensions nor alleged that good cause existed for their failure to timely file an expert's certificate. As a result, the Hausers failed to arbitrate their claim as required by the Statute. The circuit court correctly dismissed the action.

*JUDGMENT OF COURT OF SPECIAL APPEALS RE- VERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT. COSTS TO BE PAID BY THE RE- SPONDENTS.*