893 A.2d 654

**Keith J. OSBORNE**

v.

**Clifford S. WALZER, et al.**

No. 2457, Sept. Term, 2004.

Court of Special Appeals of Maryland.

March 1, 2006.

Jonathan A. Hodgson, Annapolis, for appellant.

Stuart N. Herschfeld (Joan F. Brault, Brault Graham LLC, on brief), Rockville, for appellee.

Panel MURPHY, C.J., ADKINS and KRAUSER, JJ.

KRAUSER, J.

We are asked to decide whether Md.Code (1974, 2002 Repl.Vol.), § 3–2A–04(b) of the Courts and Judicial Proceedings Article ("CJP") requires the dismissal of a medical malpractice claim when the claimant's Certificate of Qualified Expert was filed, without an "attesting expert's" report attached. The Circuit Court for Anne Arundel County believed that it does and, although such a report was ultimately filed, dismissed the malpractice complaint of appellant Keith Osborne against appellees, Clifford Walzer, DMD, and Walzer & Sullivan, D.D.S., P.C. Because we disagree with both the action taken by that court and the reason advanced for that action, we shall vacate the circuit court's order and remand this case for further proceedings.

## BACKGROUND

Appellant sought treatment from appellees for his broken jaw. The treatment he received, appellant contends, left his jaw permanently disfigured. Claiming that his disfigurement was the result of appellees' negligence, appellant filed a Statement of Claim with the Health Claims Arbitration Office ("HCAO"). Within ninety days of filing that claim, appellant filed a Certificate of Qualified Expert, as required by statute.

The certificate identified appellees as the health care providers against whom the claim was being brought. It then set out the qualifications of appellant's expert, James S. Elmore, DMD, and the medical records he reviewed in rendering his opinion. Just above his signature, Dr. Elmore intoned, "Based on my training, expertise and review of the records, it is my opinion that there were deviations from the standards of care and said deviations were the proximate cause of Claimant Keith Osbourne's injury." But no medical report was attached to the certificate, as required by law.

After arbitration was waived, appellant filed a complaint in the Circuit Court for Anne Arundel County. An answer to that complaint was filed by appellees and, three months later, a motion to strike appellant's "certificate of qualified expert" and to dismiss his complaint. In responding to that motion, appellant produced the missing report. But that failed to persuade the circuit court to deny appellees' motion. For not appending that report to his certificate, when it was filed, the circuit court dismissed appellant's complaint without prejudice. This appeal ensued.

## DISCUSSION

■ Appellant maintains that CJP § 3–2A–04(b) does not require dismissal of his complaint, either because a report of the attesting expert was not attached to his certificate of a qualified expert, as the circuit court held, or because it was not otherwise filed within ninety days of the complaint. The two subsections of CJP § 3–2A–04 that are relevant to this appeal, subsections (b)(1)(i) and (b)(3), state respectively:

(1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director attesting to departure from the standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint.

. . . .

(3) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached. Discovery is available as to the basis of the certificate.

CJP § 3–2A–04(b)(3) does not, appellant points out, mandate dismissal of his complaint because the attesting expert's report was not attached to the qualified expert certificate when it was filed. Nor does it require, he maintains, dismissal because the report was filed beyond the statutory time period for filing certificates. Predictably, appellees disagree. They insist that, when the two subsections are read together, they require dismissal for either or both reasons.

 To ascertain the meaning of a statute, we turn to the rules of statutory construction. The first such rule, which the Court of Appeals has referred to as the "cardinal rule" of statutory construction, "is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995); *see also Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987 (2000); *Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898 (1995). " 'The primary source from which we glean this intention is the language of the statute itself. . . .' " *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 747, 599 A.2d 875 (1992) (quoting *Mazor v. Dep't of Corr.,* 279 Md. 355, 360, 369 A.2d 82 (1977)). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, (1994).

But the crux of our interpretation rests not on what the words plainly state but on what they plainly omit. There is simply no language in § 3–2A–04(b)(3) that requires a claim to be dismissed if the expert's report is not filed with the expert's certificate or if the report is not otherwise filed within ninety days of the complaint. While the statute plainly mandates dismissal for failing to file the certificate within the prescribed ninety-day time period, it does not impose such a penalty either for failing to attach the report to the certificate or for filing the report late.

Nor can we impose such a requirement by judicial interpolation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 181, 776 A.2d 645 (2001) ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used. . . ."); *Bd. of Educ. of Garrett County v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185 (1982) (stating that we "may not insert . . . words to make a statute express an intention not evidenced in its original form"). That is particularly true when the statute, as here, is in derogation of the common law of this State. Commenting on the Health Care Malpractice Claims Statute in *Azarian v. Witte*, we observed:

> Before July 1, 1986, medical malpractice claimants were not required to provide [a qualified expert's certificate] or face dismissal of their claims. The current requirements of § 3–2A–04(b)(1)(i) apply only to claims filed after July 1, 1986. By imposing this and other mandatory procedural requirements on claimants, the Act in effect modifies the common law. It not only determines who may testify for a claimant but whether a claimant has an action at all. As the Act in general and the "attesting expert" provision in particular are in derogation of the common law, they must be narrowly construed.

*Azarian v. Witte*, 140 Md.App. 70, 96, 779 A.2d 1043 (2001), *aff'd*, 369 Md. 518, 801 A.2d 160 (2002).

██ Because the statutory provisions at issue are plainly in contravention of the common law of this State, they must be

"strictly construed," and, "[w]here there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in the common law." *Pink v. Cambridge Acquisition, Inc.*, 126 Md.App. 61, 72, 727 A.2d 414, *cert. denied*, 355 Md. 613, 735 A.2d 1107 (1999) (citing Norman J. Singer, *Sutherland Statutory Construction* § 61.01 (5th ed.1992); 73 Am.Jur.2d, *Statutes* § 287 at 448–49 (1974)). That rule, in effect, prohibits this Court from finding a penalty, particularly one as lethal as appellees request, in § 3–2A–04(b), where none has been articulated. While § 3–2A–04(b)(1)(i) unambiguously directs dismissal of a claim, whose supporting certificate is either untimely filed or lacks specific attestations, § 3–2A–04(b)(3) is silent as to what occurs to the same claim if an attesting expert's report is not filed with the certificate, as required by that provision, or within ninety days of the complaint.

The failure of the statute to specify what information the report must contain and what occurs if it is not filed in accordance with statutory directives is not a reflection of a legislative oversight. Such specificity is not required in the report requirement because the certificate requirement, which spells out what the certificate must contain and when it must be filed, satisfies, as we shall see, the statute's overriding purpose of eliminating frivolous malpractice claims early in the litigatory process.

Moreover, in urging this Court to read the two subsections together, appellees overlook a guiding maxim of statutory construction: "*expressio unius est exclusio alterius*," that is, "the expression of one thing is the exclusion of another." Because a penalty for failing to file an expert's certificate is present in subsection (b)(1)(i), its absence in subsection (b)(3) for failing to file a timely report implies that the legislature did not intend to impose this drastic remedy for that shortcoming. *See Drew v. First Guar. Mortgage Corp.*, 379 Md. 318, 329, 842 A.2d 1 (2003) (citing *Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen*, 366 Md. 336, 352, 783 A.2d 691 (2001); *Macht v. Dep't of Assessments*, 266 Md.

602, 618–19, 296 A.2d 162 (1972); *Alan J. Cornblatt, P.A. v. Barow*, 153 N.J. 218, 708 A.2d 401 (1998)). We are not suggesting, however, that what the statute requires by its words—the filing of the report with the certificate—it later rescinds by its silence. On the contrary, the trial court may deal decisively with a delinquent report. It may, for example, dismiss a complaint, upon the motion of the defendant health care providers, if no report is ever filed, or, if circumstances demand, it may set a deadline for the filing of such a report and then dismiss the complaint if that deadline is not met.

 Furthermore, our reluctance to find a mandatory penalty for failing to attach an expert's report to the certificate of a qualified expert is consistent with the legislature's purpose in enacting the statute. "In 1976, the General Assembly enacted the Health Care Malpractice Claims Statute ... in response to explosive growth in medical malpractice claims and the resulting effect on health care providers' ability to obtain malpractice insurance." *McCready Mem'l Hosp. v. Hauser*, 330 Md. 497, 500, 624 A.2d 1249 (1993). "The obvious purpose of the certificate requirement," this Court observed, "reflects the General Assembly's desire to weed out, shortly after suit is filed, nonmeritorious medical malpractice claims." *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 645, 853 A.2d 813 (2004).

In the way that the statute is written, it is clear that it is the function of the certificate, which must contain certain attestations by a qualified expert, and not the report, whose content is left unspecified, to "weed out ... nonmeritorious medical malpractice claims." Moreover, since the certificate must provide basic information about the claim under § 3–2A–04(b)(1)(i) and since "[d]iscovery is available as to the basis of the certificate" under § 3–2A–04(b)(3), appellees were not prejudiced by the belated filing of the report. Nor do they contend otherwise.[1]

---

1. Appellees' brief is silent as to any claim of prejudice.

But what the language of § 3–2A–04(b) declines to bestow, appellees claim, was granted by this Court in *D'Angelo,* 157 Md.App. 631, 853 A.2d 813. They maintain that there, we held, in effect, that, if a report does not accompany a certificate, as required by § 3–2A–04(b)(3), the underlying claim must be dismissed. But *D'Angelo* does not stand for that proposition, nor does it present a persuasive factual analogue.

In *D'Angelo,* we upheld the circuit court's dismissal of a medical malpractice complaint because the two certificates of qualified expert that were filed in that case failed to comply with the requirements of CJP § 3–2A–04(b). In that case, the plaintiffs filed a claim in the HCAO, naming thirty-one defendants, including twenty-nine medical doctors. 157 Md.App. at 635, 638, 853 A.2d 813. But the two certificates of qualified expert did not name any other health care provider but "St. Agnes Hospital." *Id.* at 637, 853 A.2d 813. What that meant, we observed, is that the certificates from two different qualified experts "did not say that any of the thirty-one defendants either departed from the standard of care or that the departure from the standard of care by any of the defendants was the proximate cause of the injuries alleged." *Id.* at 635, 853 A.2d 813. In other words, "there [was] nothing in the certificate[s] to indicate the identity of the health care providers who the experts believed rendered substandard care." *Id.* at 637, 853 A.2d 813.

"A related problem," we noted, was "that the certificates said that each expert had 'reviewed the medical records and films of the Health Care Providers named in this claim,' even though it was later learned that when the certificates were executed the certifying experts did not know the identity of *any* of the health care providers who were going to be named by plaintiffs' counsel in the HCAO suit." *Id.* And, if that were not enough, " 'St. Agnes Hospital,' which [was] mentioned in the caption of both certificates," was not, we pointed out, "named as a defendant in the statement of claims later filed by [the plaintiffs]." *Id.*

.

The plaintiffs' contention that a certificate does not have to state *who* violated the appropriate standard of care, so long as the expert certifies "that someone (as yet unknown) breached the applicable standard and that someone's deviation from the appropriate standard of care proximately caused medical injury," we emphatically rejected. *Id.* at 646, 853 A.2d 813. "If such an interpretation were sanctioned, the certificate requirement would amount to a useless formality," we explained, "that would in no way help weed out nonmeritorious claims." *Id.* Indeed, "[a]t the time plaintiffs filed their certificates, it was well established," we pointed out, "that the certifying doctor was required to say that he or she was of the opinion that the *defendants,* who were named in the complaint, deviated from the applicable standard of care and that the deviation proximately caused the plaintiff's injury." *Id.* (emphasis in original); *see also McCready Mem'l Hosp.,* 330 Md. at 501, 624 A.2d 1249 ("[T]he plaintiff must file a certificate of qualified expert . . . *attesting to a defendant's departure from the relevant standards of care* which proximately caused the plaintiff's injury.") (emphasis added); *Witte v. Azarian,* 369 Md. 518, 521, 801 A.2d 160 (2002) ("[U]nless . . . the claimant files with the HCAO a certificate of a qualified expert attesting that *the defendant's conduct* constituted a departure from the standard of care and that the departure was the proximate cause of the alleged injury, the claim must be dismissed with prejudice.") (emphasis added).

Affirming the circuit court's dismissal of the plaintiffs' complaint as to all defendants, we concluded as follows: "The certificates of the type appellants filed in the HCAO fulfill no useful purpose whatsoever and were not in compliance with the requirements of section 3–2A–04(b). We therefore hold that the motions judge did not err in dismissing appellants' claims." *D'Angelo,* 157 Md.App. at 652, 853 A.2d 813.

In sharp contrast to the certificates filed in *D'Angelo,* appellant's certificate specifically named appellees as the health care providers who allegedly rendered the substandard care that proximately caused his injuries. Moreover, there is no dispute that appellant's certificate fully met all other

statutory requirements. Indeed, the only significant circumstance that the two cases share is that here, as in *D'Angelo*, no report was filed with the certificate of a qualified expert. But appellants corrected that error and did so without provoking any claim of prejudice by the defendant health care providers. Although we did express the view in *D'Angelo* that the absence of a report "exacerbated" the "deficiency" of the certificates, *id.*, we did not suggest, nor did we intend to, that had a report been attached to either of the plaintiffs' certificates we would have reached a different result.

**JUDGMENT VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**