957 A.2d 654

**Gail A. KEARNEY**

v.

**Robert S. BERGER.**

**No. 534, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Oct. 2, 2008.

Barry J. Nace (Paulson & Nace, on brief), Washington, DC, for Appellant.

Thomas C. Marriner (Wharton, Levin, Ehrmantraut & Klein, PA, on brief), Annappolis, for Appellee.

Panel: DAVIS,*ADKINS, SALLY D., and GALE E. RASIN, (specially assigned), JJ.

RASIN, J.

This medical malpractice appeal requires us to consider, *inter alia*, whether a Motion for Extension for Good Cause must be filed within the statutory 180-day time period as provided in Md.Code. Ann. (1974, 2001 Repl. Vol.), § 3–2A–04 of the Courts and Judicial Proceedings Article.[1]

The matter is rooted in a negligence action filed in the Circuit Court for Anne Arundel County by appellants, Gail A. Kearney, individually and as Personal Representative of the Estate of Kevin M. Kearney, Meghan and Robert Kearney, as surviving children of Mr. Kearney, and Thomas Kearney, as surviving father of Mr. Kearney, alleging survival and wrongful death claims arising from the death of Kevin M. Kearney ("Kearney"), who was treated for a malignant melanoma, and subsequently died as a result of the melanoma. Appellee Dr. Robert S. Berger, M.D. filed a Motion to Dismiss for failure to comply with the statutory procedure of the Health Care Malpractice Claims Statute. The circuit court granted appellee's motion and dismissed appellants' claim without prejudice.

---

* Adkins, Sally D., J., now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

1. All statutory references herein cite the Annotated Code of Maryland unless otherwise indicated.

This appeal was thereafter timely noted, in which appellants present the following questions for our review:

I. When a plaintiff specifically avers to having met a required precondition to filing a claim, does a defendant waive objections to that averment by failing to deny it by either pre-answer motion or in the defendant's answer itself?

II. Did the trial court err in determining that appellants' motion for extension of time must be denied as untimely; and if so, does good cause exist to grant the requested extension when appellants relied-among other things-on a government official's ruling or lack thereof?

For the reasons that follow, we answer question one in the negative, question two in the affirmative and, accordingly, reverse the judgment of the Circuit Court for Anne Arundel County.

## I. FACTUAL BACKGROUND AND PROCEDURAL SUMMARY

On August 16, 2001, Dr. Berger treated Kearney for a protruding mole that was three-eighths of an inch in diameter and located on his lower left calf. Dr. Berger froze the mole and excised it. In October 2002, the mole returned and Dr. Berger again froze and excised the mole. When the mole returned in November 2002, Dr. Berger removed the mole and sent tissue from the mole to a laboratory for a pathological study. Approximately three days after the tissue was sent to the laboratory, Dr. Berger informed Kearney that the mole tested positive for melanoma. Kearney was then directed to consult an oncologist. The malignant melanoma metastasized and appellants assert that Dr. Berger's delay in ordering a pathological study was the proximate cause of Kearney's death on August 18, 2003.

On August 6, 2004, appellants filed a claim with the Health Claims Arbitration Dispute Resolution Office (HCADRO) [2] for

---

2. At the time the claim was filed, the office was known as the Health Care Arbitration Office. In 2004, the Legislature renamed the office as

wrongful death and survival actions relating to the death of Kearney. Along with the claim, appellants filed a Certification of Dr. Max Cohen. A report, however, was not attached to Dr. Cohen's certification.

On June 9, 2005, a Waiver of Arbitration was filed. Appellants subsequently filed a Complaint in the Circuit Court for Anne Arundel County.

On January 8, 2007, appellee filed a Motion to Dismiss based on the appellants' failure to file a sufficient certificate in the HCADRO within the time limits. On January 19, 2007, appellants filed a Motion for Extension of Time to Amend the Certificate of Merit for good cause in the HCADRO.[3] A Motion for Extension was also filed in the Circuit Court on January 22, 2007.

On April 23, 2007, a motions hearing was held in the Circuit Court for Anne Arundel County. In a ruling from the bench, the trial court granted appellee's motion, finding that appellants failed to file a report as required under *Walzer v. Osborne*, 395 Md. 563, 911 A.2d 427 (2006). The court further determined that the certificate failed to comply with § 3–2A–04(b)(4) and that the Motion for Extension was untimely.

Thereafter, appellants filed a Motion to Reconsider Dismissal of Claim. The Motion was denied on June 12, 2007.

## II. STANDARD OF REVIEW

In reviewing a trial court's grant of a motion to dismiss, "the truth of all well-pleaded relevant and material facts is assumed, as well as all inferences which can be reasonably drawn from the pleadings." *Odyniec v. Schneider,* 322 Md. 520, 525, 588 A.2d 786, 788 (1991). Dismissal at the

---

the Health Care Alternative Dispute Resolution Office. *See* Cts. and Jud. Proc., § 3–2A–03.

**3.** After hearing oral arguments, the Director, in a May 4, 2007 order, denied the Motion for Extension of Time to Amend Certificate of Merit because the Certificate failed to include any information which could be interpreted as an attesting expert.

trial court level will only be proper if, after assuming the allegations and permissible inferences flowing therefrom are true, the plaintiff would not be afforded relief. *McNack v. State*, 398 Md. 378, 920 A.2d 1097, 1102 (2007) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 121, 916 A.2d 257, 264 (2007)).

## III. ANALYSIS

### A.

In 1976, the General Assembly enacted the Health Care Malpractice Claims Statute (the Statute) in response to explosive growth in medical malpractice claims and the resulting effect on health care providers' ability to obtain malpractice insurance. 1976 Md. Laws, Chap. 235; *see generally* K. Quinn, *The Health Care Malpractice Claims Statute: Maryland's Response to the Medical Malpractice Crisis*, 10 U. Balt. L.Rev. 74 (1980) (describing evolution of Statute and assessing its early effectiveness). "[T]he general thrust of the Act is that medical malpractice claims be submitted to arbitration as a precondition to court action" where the potential claim exceeds the district court's concurrent jurisdiction. *Attorney General v. Johnson*, 282 Md. 274, 278–79, 385 A.2d 57, 60 (1978); *see also Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982); Md.Code (1974; 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–2A–02(a).

The basic procedures for initiating and maintaining a claim under the Statute require that a person with a medical malpractice claim first file that claim with the Director of the HCADRO. § 3–2A–04(a). Thereafter, the plaintiff must file a certificate of qualified expert ... attesting to a defendant's departure from the relevant standards of care which proximately caused the plaintiff's injury. § 3–2A–04(b)(1)(i). In 1986, the General Assembly enacted an amendment requiring the filing of a certificate and an attesting expert's report.[4] By

---

4. In *Walzer v. Osborne*, 395 Md. 563, 582, 911 A.2d 427, 438 (2006), the Court explained the difference between a certificate and an attesting expert's report, saying:

enacting the 1986 amendment, the General Assembly determined that, in the context of a medical malpractice claim, in order to maintain an action against a health care provider, a plaintiff is required to file a certificate and an attesting expert's report in addition to filing a complaint. In general, the Statute mandates that failure to file an expert's certificate within 90 days after filing the claim results in a dismissal of the claim.

In order to relieve the harshness of that provision, the General Assembly, in 1989, enacted an amendment to the statute, by which, "[i]n lieu of dismissing the claim, the panel chairman shall grant an extension of no more than 90 days for filing the certificate ...," if limitations have expired as to the claim and the "failure to file the certificate was neither willful nor the result of gross negligence." § 3–2A–04(b)(1)(ii). In addition to the automatic 90–day extension,[5] the General Assembly provided two other escape valves, both of which are applicable to this case. Section 3–2A–04(b)(5) provides that "[a]n extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for

> While it is arguably unclear from the Statute exactly what the expert report should contain, common sense dictates that the Legislature would not require two documents that assert the same information. Furthermore, it is clear from the language of the Statute that the certificate required of the plaintiff is merely an assertion that the physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints.... It therefore follows that the attesting expert report must explain how or why the physician failed ... to meet the standard of care and include some details supporting the certificate of qualified expert.... [T]he expert report should contain at least some additional information and should supplement the [c]ertificate. Requiring an attesting expert to provide details, explaining how or why the defendant doctor allegedly departed from the standards of care, will help weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim....

5. In *McCready Mem'l Hosp. v. Hauser*, 330 Md. 497, 624 A.2d 1249 (1993), the Court interpreted this 90–day extension as automatic (holding that the statutory extension of no more than 90 days of 90–day period following filing of medical malpractice complaint for claimant to file certificate of qualified expert commences automatically in lieu of dismissal, without requirement of formal or informal request).

good cause shown." Section 3-2A-05(j) states that, "[e]xcept for time limitations pertaining to the filing of a claim or response, the Director or the panel chairman, for good cause shown, may lengthen or shorten the time limitations prescribed in subsections (b) and (g) of this section and § 3 -2A-04 of this article."

## B.

Before determining whether the request for an extension was made in a timely manner, this Court must address appellants' argument that appellee has waived his right to object. Appellants maintain that appellee has waived any objection that the condition precedent of filing a proper certificate was not met. According to appellants, appellee waived any objection based upon the failure to meet a condition precedent by failing to timely deny appellants' specific averment in the complaint that they satisfied the condition precedents set forth in the Statute.

Appellee argues that the requirement to file a proper certificate is a condition precedent and therefore cannot be waived at any time. He contends that *Carroll v. Konits*, 400 Md. 167, 929 A.2d 19 (2007) has "addressed the 'mandatory nature of conditions precedent.'"

With respect to whether the requirement to file a proper certificate operates as a condition precedent to the maintenance of a medical malpractice claim, we begin with a review of the analysis in *Carroll*. In *Carroll, supra*, the plaintiffs filed a claim with the HCADRO, naming Dr. Phillip H. Konits and Dr. Efem E. Imoke as defendants. 400 Md. at 171, 929 A.2d at 21. The claim was then transferred to the Circuit Court for Baltimore City where it was dismissed on various grounds, including, but not limited to, Carroll's failure to submit a proper certificate of qualified expert. *Id.*

While on appeal to this Court, the Court of Appeals issued a writ of certiorari on its own motion to determine whether the Circuit Court erred in finding that Mary Carroll's expert witness report and certification were legally sufficient, thereby

dismissing the case. The Court of Appeals upheld the dismissal, stating: "[B]ecause the [c]ertificate is a condition precedent, the Circuit Court for Baltimore City correctly granted the appellees' motion to dismiss the case." 400 Md. at 171, 929 A.2d at 21.

*Carroll* established that the filing of a proper certificate operates as a condition precedent to filing a claim in Circuit Court. This finding was based on the ground that because arbitration is a condition precedent to filing a claim in a Circuit Court, and because the filing of a certificate is an *indispensable step* in the arbitration process, a proper certificate must be filed or the condition precedent is not satisfied. 400 Md. at 181, 929 A.2d at 28; *Witte v. Azarian,* 369 Md. 518, 527, 801 A.2d 160, 166 (2002) (recognizing that a claimant must file with the HCADRO and comply with all statutory provisions before proceeding to a circuit court); *McCready,* 330 Md. 497, 512, 624 A.2d 1249, 1257 (1993) (finding that "the Maryland Health Care Malpractice Claims Statute mandates that claimants arbitrate their claims before the [HCA DRO] as a condition precedent to maintaining their suit in circuit court."). The *Carroll* Court stated: "In *Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 904 A.2d 511 (2006), we discussed the mandatory nature of conditions precedent, albeit in a different context. There we said: '[A] condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied.' " 400 Md. at 182, 929 A.2d at 28 n. 12. Furthermore, in summarizing the difference between a statute of limitations and a condition precedent, the Court continued: "The defense of limitations may be waived; however, a condition precedent to liability may not be waived." 400 Md. at 182, 929 A.2d at 28 (quoting *Georgia–Pacific Corp.,* 394 Md. at 85, 904 A.2d at 526).

Appellants recognize that filing a statement of claim with the HCADRO and the filing of a certificate of qualified expert are each a condition precedent to the institution of a medical malpractice claim. Appellants, however, contend that the decision of the Court of Appeals in *Carroll* is not applicable.

Appellants argue that by specifically averring that the certificate was sufficient under the statute, appellee was required to deny the averment or waive any objection based on the sufficiency of the certificate. This specific averment, appellants argue, is what distinguishes the present issue from prior condition precedents that have been deemed unwaivable.

Appellants rely on Maryland Rules of Civil Procedure, which state, "a party shall admit or deny the averments upon which the adverse party relies.... Denials shall fairly meet the substance of the averments denied." Md. R. Civ. Pro. § 2–323 (2007). Appellants continue to argue that the Rules state, "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial." *Id.* Appellants argue that the trial court's ruling means that "a party can lie in wait and spring a hyper-technical trap to avoid a trial long after the case had been filed, an Answer submitted, and with trial fast approaching."

Despite appellants' attempt to distinguish the two scenarios, appellants' reliance on the Maryland Rules is misplaced. It is clear that the Court of Appeals has determined that a condition precedent cannot be waived at any time. In accordance with prior case law, we hold that the filing of a certificate operates as a condition precedent, which cannot be waived, and therefore, appellee did not waive any objection by failing to generally or specifically deny the specific averment by the appellants.

### C.

Determining whether the Legislature intended the request of an extension for good cause to be made before the expiration of the statutory 180–day period is a matter of statutory construction. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006) (citations omitted); *see Mayor and Town Council of Oakland*

*v. Mayor and Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Moore v. State*, 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *Johnson v. Mayor of Balt. City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *O'Connor v. Balt. County*, 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004); *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). In addition, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *see Chow*, 393 Md. at 443, 903 A.2d at 395.

If the language of the statute is ambiguous, however, then " 'courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment' " under consideration. *Fraternal Order of Police v. Mehrling*, 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986)). An ambiguity exists within a statute when there exists "two or more reasonable alternative interpretations of the statute." *Chow*, 393 Md. at 444, 903 A.2d at 395.

"If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia-among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions." *Witte*, 369 Md. at 525–26, 801 A.2d at 165.

Appellants believe that because the good cause provisions are silent as to the timing of the request, there is no limit as long as good cause is shown. Appellants, therefore, argue that the trial court erred in refusing to grant the requested extension because the good cause extensions are not limited to being requested within the first 180 days in which the claim was filed.

Appellee contends that any extension was required to be requested within 180 days. Thus, according to appellee, appellants are not entitled to an extension for good cause because their motion for extension was untimely as it was filed almost two years after the statutory maximum.

The trial court accepted appellee's argument and stated: "I think Defendant's argument is fairly persuasive that I can't grant an extension when you're outside of all the other periods of time. You're outside the 180, he says it's been two years and forth." The trial court continued: "my understanding of the law is, the part I just quoted for Mr. Nace, is that I can't extend, give them a further extension beyond the 180 days."

█ It is evident at a glance that the legislative intent as to the timing of the extension for good cause is not clear from the words of the statute alone. As recognized in *McCready*, "[t]hese provisions are silent as to the timing of a request, and they do not expressly limit the length of any extension." *McCready*, 330 Md. at 508, 624 A.2d at 1255. Though this Court " 'cannot assume authority to read into the Act what the Legislature deliberately left out' [,]" judicial construction is necessary where an ambiguity exists. *Price v. State*, 378 Md. 378, 388, 835 A.2d 1221, 1226 (2003) (quoting *Howard Contr. Co. v. Yeager* 184 Md. 503, 511, 41 A.2d 494, 498 (1945)). Had the Legislature intended to restrict the timing of the extension for good cause, by stating that the request must be made within the 180–day statutory period, it could have said so. It did not say so in 1989, and it has not said so in the 19 years since.

A review of other Maryland statutes reveals that the Legislature has included the phrase "before its expiration" in

provisions pertaining to the timing of requesting extensions. For example, Estates and Trusts § 3–206(a)(2) states: "[T]he court may extend the time for election, *before its expiration,* for a period not to exceed three months at a time, upon notice given to the person representative and for good cause shown." (Emphasis added). In examining § 3–206(a)(2), the Court in *Downes v. Downes,* 388 Md. 561, 880 A.2d 343 (2005) addressed whether an orphans' court, or on appeal from that court, a circuit court, had any discretion to grant an extension when the request therefore was not made within the period originally prescribed or extended by a previous order. The Court found that the "words of the statute and Rule, as applicable to the orphans' courts, are clear and unambiguous" and held that any extension granted is clearly conditioned on a request for the extension being filed with the court *prior to the expiration* of the most recent allowable period. *Downes,* 388 Md. at 572, 880 A.2d at 349 (Emphasis added). By including precise language about the timing of the request in one provision pertaining to extensions, one may infer that the General Assembly intended to exclude the requirement that the request be made before the expiration of the allowable period in the good cause provisions of this Statute.

In *Carroll v. Konits,* 400 Md. 167, 929 A.2d 19, the Court of Appeals examined whether an extension could be granted for good cause if the request was made outside the 180–day period. Dr. Konits raised the argument to the Court that the Director did not have discretion to grant Carroll an extension of time because it was not filed within the 180–day period and good cause was not established. He maintained that the Court should therefore not address the propriety of the purported Certificate of Merit. Relying on *Navarro–Monzo v. Washington Adventist Hosp.,* 380 Md. 195, 200–04, 844 A.2d 406, 409–12 (2004), the Court noted that this exact argument was previously rejected by the Court of Appeals and expressly rejected Dr. Konits's argument as well. Citing *McCready,* 330 Md. at 509, 624 A.2d at 1255, the Court characterized extensions for good cause as " 'malleable,' " noting that they provide "room for the Director's discretion." *Id.* at 185, 624 A.2d 1249. Though *Carroll* did not resolve whether the

Director did in fact have good cause to grant the extension, the Court observed: "In accordance with the statutory language and consistent with our prior case law, we believe that the General Assembly made it clear that the good cause extensions are discretionary and without time limitations, so long as the Claimant demonstrates good cause." *Id.*

Appellee insists that the analysis in *Carroll* does not control and is simply dicta because "the Court did not determine the validity of the 'good cause' extension because a determination on that issue did not impact the Court's final decision." [6] Appellee continues that the analysis in *Carroll* was primarily based upon *Navarro–Monzo*, where the Court held that if a valid certificate was not filed within the requisite statutory period, "§ 3–2A04(b)(1)(i) became applicable and the claim was required to be dismissed." *Navarro–Monzo*, 380 Md. at 203, 844 A.2d at 411. While appellee is correct in noting that the analysis in *Carroll* was based upon *Navarro–Monzo*, it remains that the Court in *Carroll* determined that a good cause extension could be granted beyond the 180–day time period, and that determination binds this Court.

Appellee attempts to distinguish *Carroll* by arguing that appellants in *Carroll* filed a Motion for Extension of Time merely twelve (12) days after the deadline expired. In contrast, appellants in the present case filed a Motion for Extension of Time more than 700 days after the 180–day period. Despite appellee's attempt to draw distinctions between the

---

**6.** The Court in *Carroll* held that "a [c]ertificate is a condition precedent and at a minimum, must identify with specificity, the defendant(s) (licensed professional(s)) against whom the claims are brought, include a statement that the named defendant(s) breached the applicable standard of care, and that such a departure from the standard of care was the proximate cause of the plaintiff's injuries. In the case *sub judice*, the certificate was incomplete because it failed to specifically identify the licensed professionals who allegedly breached the standard of care and failed to state that the alleged departure from the standard of care, by whichever doctor, or doctors, the expert failed to identify, was the proximate cause of Carroll's injuries. Therefore, because the certificate is a condition precedent, the Circuit Court for Baltimore City correctly granted the appellees' motion to dismiss the case." *Carroll*, 400 Md. at 201, 929 A.2d at 39–40.

present case and *Carroll*, the length of time between the expiration of the 180–day period and the request for an extension is irrelevant. The Court in *Carroll* did not find the request for extension proper because it was only twelve (12) days beyond the 180–day period, but instead determined that good cause extensions are "discretionary and *without time limitations*, so long as the Claimant demonstrates good cause." *Carroll*, 400 Md. at 185, 929 A.2d at 30 (Emphasis added). Pursuant to this interpretation, a motion for extension filed twelve (12) days beyond the 180–day period or one filed 700 days beyond that period is permissible.

Appellee continues to draw distinctions by arguing that the Director in *Carroll* granted the motion, while the Director in the current case denied the motion for extension. Appellee contends that we should defer to the Director's discretion since he held a complete hearing on the issue and, thereafter, issued an Order denying the motion. A review of the Director's order reveals that the Director denied appellants' motion because it failed to "include any information that may be interpreted as an attesting expert report." The Order also stated that it was the opinion of the Director that the "Circuit Court for Anne Arundel County has jurisdiction to grant or deny Plaintiff Kearney's Motion for Extension of Time." This language seems to indicate that the Director was leaving the decision to grant an extension for good cause to the discretion of the circuit court.

Therefore, in accordance with the finding of the Court of Appeals, we hold that the motion for extension for good cause was not untimely and that appellants were entitled to present their argument for good cause to the circuit court. Because the trial court never addressed whether appellants established good cause, we will not resolve whether good cause existed in this case. Instead, we will remand the case to the Circuit Court for resolution of that issue.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY APPELLEE.**